# SUPREME COURT OF TEXAS.

## GALVESTON TERM, 1886.

| 66 | 1 |
| 74 | 642 |
| 66 | 1 |
| 79 | 103 |
| 66 | 1 |
| 81 | 331 |
| 66 | 1 |
| 83 | 445 |
| 84 | 459 |
| 66 | 1 |
| 89 | 527 |

CHAS. E. WYNNE, ASSIGNEE, v. THOS. F. HUDSON ET AL.

(Case No. 1827)

1. HOMESTEAD—APPROPRIATION OF PART BY HUSBAND TO DIFFERENT USE—If the husband, in good faith, with no intent to avoid the law which declares that he shall not sell the homestead without the consent of his wife, appropriates a part of it to a use which will withdraw from such part its homestead character, his act must be recognized as the exercise of the power vested in him as the head of the family, and the part so appropriated will cease to be a part of the homestead.

2. SAME—PLACE OF BUSINESS—MERE WILL OF WIFE WILL NOT CONTINUE HOMESTEAD CHARACTER AFTER CESSATION OF BUSINESS—The place of business, whether detached from the home place or not, is as much a part of the homestead as is that on which the dwelling stands, and, however situated with reference thereto, will continue to be a part of the homestead after it has ceased to be used as a place to exercise the calling or business of the head of the family, if the subsequent use to which it is applied be really for the purpose of a home; but the mere will of the wife that such property shall remain homestead, after the business has ceased, cannot continue its homestead character.

3. SAME—CONTIGUOUS LOTS—PERMANENT APPROPRIATION OF PART TO USE INCONSISTENT WITH HOMESTEAD PURPOSES—CONSENT OF WIFE—When any part of the homestead, whether consisting of one lot or more, contiguous or separated, ceases to be so used, and is permanently appropriated to an inconsistent use, then the part so appropriated ceases to be homestead, and becomes subject to the payment of the husband's debts, notwithstanding the wife may not have given her consent to such use of the property.

4. SAME—HUSBAND'S ACTS—EVIDENCE—Whether the cessation of the homestead use is temporary or not, may be shown by the acts of the husband alone.

APPEAL from Burleson. Tried below before the Hon. J. B. McFarland.

The following sketch gives an approximately accurate idea of the lot and improvements in controversy:

# PLAT.

FOX STREET

N

Well

Chicken Yard

Smoke House

DWELLING

Millet Patch

Garden

Ware'h'se

110 ft.

T. B. Stone
(26.8x70)

G. W. & J. P. Heywood
(26.8x70)

W. F. Gay and J. W. Mc-
Clanahan. (26.8x70)

J. J. McMillan and J. W.
Gray. (26.8x70)

A. F. Carroll and E. B.
Bell. (26.8x70)

Fence

ALLEY

30 ft

J. C. Jones and T. P.
Hamilton. (30x75 ft.)

85 ft.

New add'n
occupied by
Barnett

New add'n
occp'd
Mur'y W.H.

New
office

Ware h.
of W.

Gallery

E. D. Barnett
(24x55)

T. V. & S. B. Mur-
ray. (23x55)

W. T. & J. C. Wom-
ble. (24x55)

Barn

Cow Lot.

Truck Patch.

HILL STREET

BUCK STREET

140 ft.

ECHOLS' STREET

S

This was an action of trespass to try title, and for damages, brought by the appellant, Charles E. Wynne, as assignee under statutory assignment, against appellee, Thos. F. Hudson, his assignor, and Hudson's wife, and a number of tenants. The defendants all pleaded, jointly:

1. That the defendant Hudson owned and claimed the premises, and the other defendants were tenants, claiming only as such, and occupying and claiming, in several distinct portions, the premises, and having no joint occupancy with any other defendant. 2. Not guilty. 3. Homestead.

On January 22, 1881, Thomas F. Hudson and John A. Hudson, partners, comprising the mercantile firm of Thos. F. Hudson & Son, of Rockdale, Milam county, Texas, both in their firm and in their individual capacity, made an assignment to the plaintiff for the benefit of their creditors, pursuant to the statute. On January 30, 1881, plaintiff qualified by giving bond, as required by law, and entered upon his duties as such assignee. By the assignment, Thos. F. Hudson conveyed to Wynne, assignee, all his property not exempt from forced sale under the constitution and laws of the state. At the date of the assignment, Thos. F. Hudson was seized and possessed of that parcel of ground and improvements, in the town of Caldwell, Burleson county, Texas, known as block number four, bounded on one side by Buck street, on another side by Fox street, on another by Echols street, and on another by Hill street, three hundred feet square, fronting on the court house square, and being one of the principal business blocks in the town of Caldwell, a town of some eight hundred inhabitants; and Wynne, as assignee, claimed the property in controversy, being a portion of that block, as assets of the estate of Thos. F. Hudson.

The assignment was for the benefit of such of the creditors as should agree to accept their proportionate shares of the debtors' estates and discharge them.

The property was community property of Thos. F. and Susan D. Hudson, who intermarried, in February, 1855. There had been five children by the marriage, three of whom were still minors, and resided with their parents. Thos. F. Hudson purchased the block in 1868, and, shortly thereafter, occupied a house thereon as a home for his family, where the family residence still stood. The whole block was put under one enclosure, and used for the convenience of their home, and its value, independent of the improvements thereon, was about $1,000; and the value of the block, without reference to the improvements, never exceeded $5,000, or equaled that sum. The only other improvements on the block, at the time of Hudson's purchase,

was the store-house on the other corner of the block, fronting on the court house square, then used by him as a place of business for himself, and which he continued to use, with the other frame buildings, as a merchant, until 1879, at which time he began business in Rockdale, Milam county, as a member of the firm of Thomas F. Hudson & Son, in a store-house then owned by them, reserving, however, the use of an office in the rear part of his old store, for the purpose of closing up his old business in Caldwell. No actual use was made of the office, so reserved, except for the storage of some goods belonging to Thos. F. Hudson, and, during the year 1880, the rear part thereof was used by his agent, Thomas Murray, in collecting up his old accounts. Hudson's family moved with him to Rockdale, but it was admitted there was no intention to abandon the Caldwell homestead.

At the date of the assignment, the frame store-house indicated on the plat as occupied by W. T. and J. C. Womble, T. V. and S. B. Murray, and E. D. Barnett, was used and occupied by tenants of Thos. F. Hudson. The frame buildings were, prior to and at the time of making the deed of assignment, only fifty-five feet in depth. After the assignment, and after the filing of the suit, they were extended so as to make them about ninety feet deep.

The walls of the two brick stores indicated on the plat as occupied by A. F. Carroll and E. B. Bell, and J. J. McMillan and J. W. Gray, to the depth of sixty feet, were then up, but the buildings not then roofed in or otherwise completed, though, by the agreement with Thos. F. Hudson, they had been contracted to tenants in advance of completion. After the making of the assignment, their depth was increased to seventy feet.

The foundation of the brick store indicated on the plat as occupied by W. F. Gay and J. W. McClannahan was then dug out, but its construction was not otherwise prosecuted. It was the purpose of Thos. F. Hudson to build the store-house thereon for rent, as was afterwards done. The store indicated on the plat as occupied by J. C. Jones and T. P. Hamilton was then occupied by them as tenants of Thos. F. Hudson. The space of twenty feet in the rear of the row of stores, part of the premises sued for, was an alley. It connected the dwelling house and its appurtenances, as well as the several stores, with Buck street, as shown by the plat.

At the time of the institution of this suit, the premises sued for were occupied by the co-defendants of Hudson and wife, as tenants of Thos. F. Hudson, carrying on their business as merchants in the eight store-houses thereon. Thos. F. Hudson was living on the block in controversy with his family, but was doing business in Rockdale at

the date of the assignment, as a member of the firm of Thos. F. Hudson & Son. The residence of Hudson and wife, on the same block, was an adequate homeplace for the family, and had attached to it usual outbuildings, well, garden, stables and horse-lot. Mrs. Hudson testified that she never agreed to the putting up of stores for rent on their homestead block; she did not approve of it, but did not say anything about it. The rental value of the property was $2,940 per annum. After the institution of the suit, Hudson erected an office building, used by him as such, at the point shown by the plat.

The cause was tried by the court without a jury, upon an agreed case, under art. 1293 R. S., and judgment was rendered for defendants, on the defense of homestead. The plaintiff appealed.

*Robt. G. Street*, for appellant, on the question of abandonment of homestead, cited: Constitution art. 16, sec. 51; Medlenka *v.* Downing, 59 Tex., 32.

*W. K. Homan* and *Sayles & Bassett*, for appellees, that the husband cannot sell the homestead without the consent of the wife, given in the manner prescribed by law, cited: Constitution, art. 16, sec. 51.

That, having no power to alienate any portion of the homestead without his wife's consent, the husband cannot acquire such power by improving and leasing it without her consent, they cited: Hancock *v.* Morgan, 17 Tex., 589; Gonhenant *v.* Cockrell, 20 Tex., 96.

That the rule as to continued use of the homestead is limited to detached parcels of ground, they cited: Miller *v.* Menke, 56 Tex., 540-564; Franklin *v.* Coffee, 18 Tex., 416, 417.

That the homestead right once acquired continues, notwithstanding changed circumstances of those who claim its benefits, they cited: Kessler *v.* Draub, 52 Tex., 575; Blum *v.* Gaines, 57 Tex., 119; Scott *v.* Dyer, 60 Tex., 135-138.

STAYTON, ASSOCIATE JUSTICE.—That the entire block, of which the land in controversy is a part, became the homestead of Hudson and his family, in the year 1868, is clear, as is it that he used a part of the block as his place of business, as a merchant, until the year 1879, since which he has not used the block in any manner as a place of business.

At that time he began business as a merchant, in another town, in a store-house owned by himself and the person who was associated with him in mercantile business. He has, however, continued to use a part of the block as a dwelling and for such pur-

poses as are appropriate to a homestead, used solely as the home of the family.

On January 22, 1881, he made an assignment for the benefit of his creditors, and, at that time, there were four store-houses on the block, which were rented to other persons, who carried on mercantile business in them, and they continued to be so used until the institution of this suit, on March 7, 1883.

At the time the assignment was made, two other store-houses were in course of construction, the brick walls being up, but the houses not otherwise completed; but contracts for the renting of these houses had been made, and were subsequently carried out after their completion.

The excavation for the foundation of another store-house was made, with intent on the part of Hudson to erect such a house for the purpose of renting it, which was, afterwards, done. Two other store-houses have since been erected on the block, and one of them rented. Eight of the store-houses are in a solid block, extending from the northeast corner of the block claimed as homestead, with Echols street, two hundred and four feet four inches, and with Buck street, ninety feet. Between these eight store-houses and another, which is, in size, thirty by seventy-five feet, runs an alley twenty feet wide, which runs along the entire rear of seven of the store-houses, and connects the part of the block still used for the purposes of a dwelling with Buck street. A fence runs along the north side of this alley the entire length of the seven connected store-houses, and in their rear. Three of the store-houses completed and in use at the time the assignment was made, were fifty-five feet long, two of them twenty-five feet wide, and the other twenty-three feet. Extensions have been made to these three houses, since the assignment, so as to give to each of them a length of ninety feet, which carries them to the fence, on the north side of the alley. The five other store-houses, in block, each have a length of seventy feet and a width of twenty-six feet eight inches, and the space between them and the fence, on the north side of the alley, has on it some small buildings, which, from their position, are most probably used in connection with the stores in front of them. When the fence on the north side of the alley was erected does not appear.

The block which embraces the several store-houses and the residence of Hudson is three hundred feet square, fronting on the court house square, and is one of the principal business blocks in the town of Caldwell, which has about eight hundred inhabitants.

It is admitted that "the residence of Hudson and wife, in the same

block, is an adequate home place for their family, and has attached to it usual out-buildings, well, garden, stable, and horse-lot."

This action is brought to recover a block of ground, fronting on Echols street one hundred and seventy-five feet eight inches, and running back one hundred and twenty feet, embracing seven of the store-houses and the ground between them and the south side of the alley, and to recover the ground on the south side of the alley, on which stands the store-house fronting on Buck street thirty feet, and running back with the alley seventy-five feet. The entire property is claimed by Hudson and wife as a part of their homestead, and Mrs. Hudson testified "that she never agreed to the putting up of stores to rent on their homestead block; she did not approve of it, but did not say anything about it."

The rental value of the property sued for, per annum, is $2,940. If the appellees, Hudson and wife, can hold the property in controversy, it must be by reason of the fact that it is a part of their homestead, considered as a dwelling place for the family; for there are no facts which can give protection to any part of it as the place of business. The admitted facts show that the part of the block not in controversy is an adequate home place for the family, which excludes the idea, that, if the appropriation of the property in controversy to the use to which it was put severs it from the homestead and operates so far as an abandonment, this was done in bad faith by the head of the family. The evidence further shows that no opposition to such use was made by the wife. It cannot be contended that the use to which the property in controversy, other than the alley, has been appropriated, is such as the homestead exemption was given to secure to the family.

Such protection is given for only two purposes :

1. To secure to the family a home—a dwelling place—humble or elegant, as the varying wants, conveniences, comforts or tastes of the family may demand or desire, and as the disposition of the head of the family may incline him to give, and his means enable him to bestow. In fine, to secure to the family a home, a shelter from which the claims of creditors cannot drive them, the extent and character of which, within the limits imposed by the constitution, must depend upon the will and ability of its head.

2. To secure to the family a place where the head of the family may pursue his or her calling or business.

The declaration of the constitution is that "the homestead in a city, town or village shall consist of lot or lots, not to exceed in value $5,000, at the time of their designation as a homestead, without

reference to the value of any improvements thereon." This declaration, however, is qualified by the further declaration that the lot or lots so designated "*shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family.*"

The purposes for which a lot or lots are used, determine their character as homestead or not. The declaration of the constitution, "that any temporary renting of the homestead *shall not change the character of the same,* when no other homestead has been acquired" carries with it the implication that a renting of the homestead, not temporary in character, *will change its character,* i. e., make that which was homestead no longer so.

The constitution thus carefully guards the homestead character from loss by a mere temporary cessation to use for either of the purposes for which the exemption is given, and permits the property of which a homestead consists to be applied temporarily to a use involving neither of those on account of which the constitution gives the exemption, but to a use or purpose whereby the family, or its head, may derive profit, as may be by the renting or hiring of any other class of property. Such use, however, must be only temporary, and an intention, acted upon, to apply the property permanently to such a use or purpose as the constitution only permits it to be applied to temporarily, will deprive a renting of its temporary character.

The fact that it was deemed necessary to provide that a temporary renting should not divest homestead property of that character, but emphasizes the fact that the use to which it is applied is the controlling fact on which the homestead right depends. If so as to the whole of that which may be one homestead, why not so as to a part of it?

The intention to use the property by renting it permanently is shown by the direct evidence; for some of the houses, if not all, were erected to be rented. The more conclusive evidence, however, of this consists in the character of the structures and the purpose to which, from this and their situations, they are adapted.

Nine capacious houses, all, save one, contiguous, and of form and structure which fit them best for mercantile purposes—all but one with frontage on the public square of a town, and situated on one of the principal business blocks in it, and, therefore, for mercantile purposes better suited and of greater rental value than for any other.

These things, in connection with the use to which they have long been applied, can leave no reasonable doubt that it was intended, under cover of a homestead exemption, to hold property which neither the letter nor spirit of the constitution permits to be so shielded.

Proof of intent has but little bearing on the question of homestead or not, when the property is actually used for the purposes contemplated by the constitution—the use itself is evidence of intent—and an inquiry, as to the intent, is important, mainly, when the inquiry is as to whether that which was once homestead has been abandoned.

The intent evidenced in this case, is an intent to hold the property under claim of homestead, without a single fact showing an intention ever to use it for the purposes for which the homestead is secured to a family.

To our minds it is too clear that, as to Thomas Hudson, a part, if not all, the property in controversy has lost its homestead character; for it has been rented, not temporarily, but rented, and intended to be rented, permanently, while tenants can be found to occupy it.

Counsel for appellees seem to recognize that this is the true posture of the case as to Thomas Hudson, but the claim is, that, as the homestead cannot be sold without the consent of the wife, given in the manner prescribed by law, therefore the husband has no power to do any act whereby a part of the homestead will cease to have that character. This, we think, is a mistake.

The husband is the natural, as well as legal, head of the family, and it certainly is not true, when he once acquires a homestead more than sufficient for the ordinary purposes of a home and place of business, that he is tied to it for life, unless his wife may consent that a part of it may be used for some other purpose. Nor is it true, if, in good faith, and as he deems best for them who are dependent upon him, he removes from a homestead, with intent never to return to it again, that the homestead character will adhere to the abandoned home until the wife consents that it may cease. What constitutes an abandonment, as matter of law, is easily determined, but its application to particular cases is often difficult. The facts which evidence it must be clear.

If a husband, in good faith, with no intent to avoid the law, which declares that he shall not sell the homestead without the consent of the wife, appropriates a part of it to a use which will withdraw from it its homestead character, his act must be recognized as the exercise of the power vested in him as the head of the family, and the part so appropriated will cease to be a part of the homestead. The propriety of this rule, when the remainder of the property constitutes an adequate homestead, is too manifest. If the act of the husband be intended to violate the right of the wife and to deprive the family of a home, she is not without remedy for the protection of the family.

The facts of this case, however, do not show, if the acts of the hus-

band done, as it is claimed they were, against her silent wish, be given-full effect, that she has been deprived of anything which, as a matter of right, law or justice, she ought to be permitted to hold. The former occupation of the entire enclosed block, for purposes for which the homestead is given, doubtless gave to it the homestead character and protection, and this continued until there was a use made of a part of it, which evidenced an intent no longer to use that part for such purposes.

The constitution prohibits the sale of *the homestead* of the family, consisting, in whole or in part, of a husband and wife, unless the consent of the wife be given, as the law requires, but it does not declare that property once, but not continuing to be, homestead, shall not be sold by the husband alone; nor does it undertake to declare under what circumstances the homestead character shall continue when once fixed, except that it, in effect, does declare that it shall cease if the property be not used for the purposes contemplated, save in a case of a temporary non-use or renting.

The place of business, whether detached from the home place or not, is as much a part of the homestead as is that on which the dwelling of the family stands, and, however situated with reference thereto, will continue to be a part of the homestead, after it has ceased to be used as a place to exercise the calling or business of the head of the family, if it be really used for the purposes of a home; but the mere will of the wife that such property shall remain homestead after the business has ceased cannot continue its character.

It has, therefore, been held that the failure to use, as a place of business, a lot or lots detached from the home place would deprive such lots of their homestead character; and this is so, without reference to the consent of the wife to the abandonment of such use. Shryock *v.* Latimer, 57 Tex., 674.

There may be expressions found in cases which would indicate that a different rule may prevail in reference to the facts which will constitute an abandonment, as homestead, of a part of an entire tract which has been once homestead, and of a tract detached from that on which the dwelling may be, but we are of the opinion that there is no substantial difference. In the one case, as in the other, when any part of the homestead, whether consisting of one lot or more, contiguous or separated, ceases to be so used, and is permanently appropriated to an inconsistent use, then the part so appropriated ceases to be homestead. The appropriation to another use, and the intent with which this is done, may be more clearly or easily shown in the one case than in the other, but the question to be determined in the one case is the same as in the other.

In other cases, in which the wife had evidenced her assent to the reduction of an area of the existing homestead on one entire parcel of land, it has been held that the homestead would be confined to the reduced area actually used for homestead purposes. Medlenka v. Downing, 59 Tex., 32; Stringer v. Swenson, 63 Tex., 12.

The assent of the wife, in those cases, to the reduction of the homestead, was not given in the way of a direct assent to a sale of a part, but in the shape of declarations as to what, in fact, constituted the homestead, made in instruments which provided for the sale of the part abandoned through trust deeds declared by the constitution void, if the property covered by them remained a part of the homestead. Such declarations were but evidence of an abandonment of the property excluded from the homestead actually used, though part of the entire property which once was homestead, and were not given effect, except in so far as they tended to show that the cessation to use the property for homestead purposes was with the intention, permanently, to appropriate to uses inconsistent with those contemplated by the constitution. The use had ceased, and the question was, whether that cessation was temporary only. Whether so or not, may be shown by the acts of the husband alone.

Under the facts of this case, we can have no doubt that the husband had the right to appropriate the part of the block in controversy to the use which he did, nor can we doubt, under the letter and spirit of the constitution, that thereby it ceased to be a part of the homestead. The block was larger than necessary for the uses and conveniences of a home; for the admitted fact is that, without that in controversy, "the residence of Hudson and wife, on the same block, is an adequate home place for their family, and has attached to it usual outbuildings, well, garden, stables and horse-lot," etc.

He was doing business in another town, on property owned by the firm of which he was a member. There is not the slightest evidence of any intention on the part of the husband to wrong his wife or family. On the contrary, he evidently, in the face of financial disaster, insolvent, and on the eve of an assignment for the benefit of his creditors, sought to place a very considerable part of his estate in buildings intended to be used for no other purpose than to yield, by renting, a revenue. If the rental value of the property, per annum, is not more than ordinary interest on the sum invested, the houses and ground on which they stand would represent about $30,000, the value of the ground alone being small. The sum thus invested ought to have gone to the creditors, and it cannot be withheld from their just claims on the ground that the wife did not consent that the

houses should be built and used for a purpose which defeats the kind intentions of the husband towards his family. As well might he have built houses to rent on the entire twelve hundred feet front to the block, and ask that they be all exempted, as to ask that those built be exempted as a part of the homestead. The constitution never contemplated any such thing, and, as liberal as are its provisions, they cannot be made to protect such a property.

The assignee, who is the plaintiff in this case, can, however, only recover such property as was not a part of the homestead at the time the assignment was made. The homestead, at that time, embraced all the block, except such part as had been devoted to other than homestead purposes.

If the fence on the north side of the alley, shown on the plat made a part of the record, was erected prior to the making of the assignment, then the seven store-houses between it and Echols street, with all the ground between that street and the alley, passed to the assignee by the assignment, for improvements made upon that ground since must go with the land of which they have been made a part. As the houses stood at the date of the assignment, if the fence before referred to was then erected, this would operate as a severance from the homestead of all the ground between the alley and Echols street, and between Buck street and a line extended from the alley to Echols street between the houses marked on the plat, "T. B. Stone" and "G. W. & J. P. Heywood," unless some part of the ground so embraced be shown to have been so used, at the time the assignment was made, as to protect it as homestead.

If the fence, before referred to, was not constructed before the assignment, then the assignee is entitled to recover the three houses marked on the plat, "W. T. Womble and J. C. Womble," "T. V. Murray and S. B. Murray," and "E. D. Barnett," with the ground on which they stood at the time of the assignment; but he would not, in such event, be entitled to recover the additions made to them since that time, nor the ground on which such additions stand. The assignee will also be entitled to recover, in any event, in their completed condition, the two brick houses marked on the plat, "A. F. Carroll and E. B. Bell," "J. J. McMillan and J. W. Gray," and the ground on which they stood, at the time the assignment was made, but not the additions made to them since the assignment, nor the ground on which additions stand. The assignee is also entitled to recover, in any event, the house south of the alley, marked on the plat "J. C. Jones and T. P. Hamilton," with all the ground on which it stands; but, as the alley marked on the plat gives entry from Buck street to

the residence of Hudson, the assignee is not entitled to recover the ground embraced in it.

The judgment will be reversed and the cause remanded, with instructions to the court below to ascertain whether the fence on the north side of the alley had been erected at the time the assignment was made, and, if it be found that it had, that judgment be entered for the appellant for all the property claimed in his petition, except the alley before referred to, unless some part of the ground between Echols street and the alley was used, at the time the assignment was made, for some such purpose as, under this opinion, would make such part a part of the homestead. If a part so embraced be found to have been so used, then, so much should not be adjudged to appellant.

We deem it proper, in this connection, to say, that no such use of any of the houses between Echols street and the alley, is shown by the evidence as would sustain the homestead claim of the appellees to any part of the property so embraced.

If it be found that the fence was not in existence, when the assignment was made, then judgment should be entered for the appellant, in any event, as before stated in this opinion, for the houses, marked on the plat " J. C. Jones and T. P. Hamilton " (south of the alley), " W. T. Womble and J. C. Womble,' " T. V. Murray and S. B. Murray," " E. D. Barnett," "A. F. Carroll and E. B. Bell," " J. J. McMillan and J. W. Gray " (fronting on Echols street), with the ground on which these six houses stood at the time of the assignment, together with any other ground, if any such, as may have been used exclusively in connection with and for the purposes for which these houses were used. It is, accordingly, so ordered.

REVERSED AND REMANDED.

[Opinion delivered March 26, 1886.]