## M. P. MALONE ET AL. V. EDWARD KORNRUMPF ET AL.

### No. 7175.

1.  **Homestead — Abandonment — Cases Adhered to.** — Wynne v. Hudson, 66 Texas, 1; Shryock v. Latimer, 57 Texas, 674; Bowman v. Watson, 66 Texas, 295, discussed and adhered to, touching abandonment of part of homestead and subjecting same to liability to levy and sale.

2.  **Homestead — Temporary Lease — Fact Case.** — Kornrumpf was head of a family and owned two adjacent town lots.   Upon them was his residence and necessary outhouses.   He carried on a saloon and in the business he occupied a house covering part of one of the lots.   His health failing he was compelled to suspend the saloon business.   He leased the saloon building first for one year and subsequently by the month.   He never entered into any other business, and testified to his intent to resume business in his saloon building when physically able to do so.   It however appeared that he did not have money or credit to buy a stock.   The other parts of the lots not covered by the saloon building were continuously used in connection with the residence.   *Held*, that the testimony was sufficient to support a verdict sustaining the homestead rights in the saloon building.   See facts.

APPEAL from Kinney.   Tried below before Hon. WINCHESTER KELSO.

No statement is necessary.

*Clark & Olds,* for appellants.—1. The Constitution protects from forced sale the place of business of the head of the family in a city, town, or village, regardless of its situation to the family homestead. This protection exists only so long as it is used for the place of business of the head of the family; and if the plaintiff had ceased to use the saloon house on the lot in controversy in this suit, as his place of business as the head of the family, and it had been by him permanently appropriated to a use inconsistent with the family homestead, then it became subject to seizure and forced sale under appellants' execution. Wynne v. Hudson, 66 Texas, 1; Bowman v. Watson, 66 Texas, 295; Shryock v. Latimer, 57 Texas, 674; Newton v. Calhoun, 68 Texas, 454; Axer and Wife v. Bassett, 63 Texas, 548; Evans v. Womack, 48 Texas, 232; Langston v. Maxey, 12 S. W. Rep., 27.

2. If the head of a family permanently abandons his place of business, it will at once cease to be his trade homestead, and be subject to seizure and forced sale, regardless of its situation to the homestead of the family, whether consisting of one lot or more, contiguous or separated therefrom; and if the business the head of the family had ceased to carry on on the premises was one requiring credit or capital to carry it on, as that of a retail liquor dealer, and if the head of the family had neither the credit nor means of carrying on the business of a retail liquor dealer, he could have no definite intention to resume that sort of business, and in law this would be a permanent abandonment of the premises as a place of business for the head of the family, and the mere will of the husband and wife will not continue the homestead character on the place of business after cessation of business. Wynne v. Hudson, 66 Texas, 1; Bowman v. Watson, 66 Texas, 295; Shryock v. Latimer, 57 Texas, 674; Newton v. Calhoun, 68 Texas, 454; Langston v. Maxey, 12 S. W. Rep., 27.

*C. C. Clamp,* for appellees.—1. Under the law of the State of Texas the homestead of a family is exempt from every species of forced sale under judgment execution, when the same is used for the purposes of a home for the family, or as a place to exercise the calling or business of the head of a family, and the temporary renting of the place of business will not divest it of its homestead character, regardless of the use for which it is thus temporarily rented. Bowman v. Watson, 66 Texas, 295; Newton v. Calhoun, 68 Texas, 454; Rev. Stats., art. 2336.

2. If appellee Edward Kornrumpf had permanently abandoned the use of the saloon house as a place of business, as it is exempt only as a place of business, it would cease to be his trade homestead. What his intention was when he rented out the property is the decisive fact to be ascertained. The question is, was it his intention to cease the use of property as a regular place of business, or was it his intention to serve his temporary purpose temporarily to rent it out? If the former, it

was subject to appellants' levy; if the latter, it was not subject and the sale was void.  Bowman v. Watson, 66 Texas, 295.

3.  The question of abandonment is never under any circumstances a question of law but purely a question of fact; and the cessation of business in the trade homestead, though caused by failure, for want of either cash or credit, does not in law constitute an abandonment.  Scheuber v. Ballew, 64 Texas, 166; Hargadene v. Whitfield, 71 Texas, 482; Gassoway v. White, 70 Texas, 475.

HOBBY, PRESIDING JUDGE, *Section A.*—The question in this case is, whether the property which is the subject matter of the litigation was abandoned by plaintiffs as a homestead, and subject to defendants' execution.

The suit is in the usual form of trespass to try title, and was brought by the appellees, Edward Kornrumpf and wife, on July 3, 1888, against the appellants, in the District Court of Kinney County.  The land involved consists of a lot, with improvements, situated in the town of Brackett, in said county, described as lot 22, in subdivision A, etc.

It is agreed, that on the 3d day of July, 1888, the date of the sale of the property under execution, the title thereto was "complete in plaintiffs," and that the defendants have whatever title could be vested by a sale under a valid judgment and execution against said Kornrumpf. If the property was not at the date of the execution sale a part of the "business or trade homestead" of plaintiffs, it was subject to the execution, and the judgment should be reversed.  Otherwise, it should be affirmed.  And the determination of this question depends upon the facts disclosed by the record before us.

The situation of the premises in controversy and plaintiffs' homestead is shown by the following sketch:

It appears from the evidence that appellees were married in 1875 or 1876. The husband had been engaged in business as a retail liquor dealer, in the saloon building on lot 22. After the marriage he purchased lot 21, in July, 1881, and he and his family have resided there ever since. He continued in the above business in the same house until April, 1886, when he was compelled to abandon the business on account of his bad health. The saloon building has never been used since as a place of business, as he has been unable, by reason of his sickness, to resume his former pursuit. It has been rented out continuously since; first for a year, and subsequently by the month. It was the husband's intention to resume business as soon as his health enabled him to do so. He has never recovered his health sufficiently to pursue his former business.

The lots 21 and 22 are under one inclosure, and there is no division fence between them. Appellees occupy the residence on lot 21, and the evidence shows that the kitchen back of the saloon on lot 22, and all of the improvements on that lot, as well as the lot itself, have been used as a homestead by the family, except the saloon building while rented. The value of the entire property, including both lots, does not exceed $3000. The rental value of the saloon was $40 per month, which revenue was used for the support of the family. No other home was owned or had been acquired by appellees. Mrs. Kornrumpf testified, that since her husband quit business in April, 1886, he had been "cramped in money matters. He could not buy a stock of goods without the money. He had no credit by which he could do so, and has not since."

The court instructed the jury, after stating the case and defining a homestead, that if the lot in question was actually used by plaintiffs for the purposes of a home, etc., prior to and at the time of the levy of the execution, to find for plaintiffs. But if they believed the lot was used by Edward Kornrumpf as a place to exercise his calling or business, and that he retired therefrom, and the property had been permanently rented since, and had not been used for the purpose of a home, etc., to find for defendants for the lot or such part of it as was subject to execution. The jury were told, that a homestead right once acquired might be lost by ceasing to use it for the purposes of a home for the family, or by ceasing to use it as a place to exercise the calling or business of the head of the family, but a temporary renting of a homestead will not change its character when no other homestead has been acquired.

The verdict was for the plaintiffs, and this appeal is prosecuted therefrom by defendants.

The first assignment of error is, that "the verdict is not supported by and is contrary to the evidence, because the evidence shows that the saloon house on the property was built for the saloon business, and

Edward Kornrumpf did business therein from 1875 to April, 1886, when he ceased to carry on his business, and rented the same out for the purpose of a saloon business, and has continuously rented and used the same for that purpose since, and that it has not been used by the family in connection with the homestead since.   And the evidence shows that said Kornrumpf has had neither money nor credit since his retirement from business to resume the same.''

The constitutional provision declaring that the urban homestead shall consist of a lot or lots not to exceed $5000 in value at the time of their designation as such, without regard to the value of improvements thereon, together with the qualification that the lot or lots so designated as a homestead shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family, has been construed in the carefully considered cases of Wynne v. Hudson, 66 Texas, 7; Shryock v. Latimer, 57 Texas, 678; and Bowman v. Watson, 66 Texas, 296, and other cases, all of which are cited by appellants and are relied on as decisive of this case.   The principles announced in these cases are too familiar to require repetition here.

It is well settled that the purposes for which the lot in controversy is used will determine whether its homestead character exists or not. The constitutional provision, that the temporary renting of the homestead shall not change its character when no other homestead has been acquired, it is held will authorize the conclusion that a renting of the homestead not of that description will change its character.   The cessation for a time to use the property for the purpose it was exempted for, and the temporary application of it to a use which may be profitable to the family, as by renting, does not destroy its homestead character.   Wynne v. Hudson, supra.   This, however, it is clearly settled must be a temporary use of it, as it has been held that an intention acted on to apply the property permanently to a purpose the Constitution only authorizes it to be temporarily applied to, will deprive a renting of its temporary character.   Wynne v. Hudson, supra.   The intention to rent the property permanently in the case of Wynne v. Hudson was established by conclusive evidence, a significant feature of which was that nine capacious houses were erected to be rented on the lots involved, of large rental value, and it appeared that they were long applied to that use.

In the case of Shryock v. Latimer, 57 Texas, it was decided, that ''when a person owning property exempt from forced sale (because used for and necessary to the exercise of his vocation or business) abandons his business and engages in some other not requiring the use of the exempt property, the act was as much an abandonment of the old business as the acquisition of a new home would be an abandonment of the old homestead.''   In that case, which appellants invoke in support of their contention that the cessation of the use of the saloon house

as a place of business, in the present case, and the permanent appropriation of it to a use inconsistent with homestead purposes, was an abandonment of it, it was held, that where the head of the family had ceased to pursue his business calling for which he used the property, and for the exercise of which calling the property was necessary, proper, and exempted, who has engaged in other business for which the property is not necessary, he can not hold such property as still exempt, simply because he may have a desire or intention at some future time to re-embark in the business which afforded the original exemption.

There is nothing in the facts of the present case to call for the application of the principle above announced, although its soundness is not questioned. The husband, Edward Kornrumpf, pursued his business calling in the saloon building, on lot 22, until ill health compelled a cessation of his business. There was no voluntary abandonment of the use of the property as a place for the exercise of his business vocation; nor was there any attempt to embark in any other enterprise or pursuit which the exempt property was not adapted to. On the contrary, the proof is, that his intention was to resume business as soon as his health would enable him to do so. There was no vague purpose on his part at some indefinite time in the future to re-embark in his former business, dependent solely on his financial ability to do so. Neither do the facts show an intention to permanently rent the property, thus bringing the case within the operation of the principle so clearly announced in Wynne v. Hudson, supra.

In the case of Bowman v. Watson, supra, the question was whether the lots in that suit were the business homestead of appellant. The lots were used for the purpose of carrying on a wagon yard business, in which he was engaged. On September 1, 1885, he rented the premises for six months and subsequently engaged in some other business for a short time different from his former vocation. His intention was to resume his business at the expiration of the lease. The court in that case say: "If this was true (the intention to resume), the temporary renting of the property did not deprive him of the exemption." His intention at the time he rented the property was held to be the decisive test. If it was to discontinue the use of the property as a regular place of business, it was such an abandonment of it as subjected it to levy. If it was to serve his purpose to temporarily rent it out, it was still entitled to exemption. In the case last cited it was held, that the facts did not authorize the conclusion as a matter of law that the property was abandoned as a homestead.

In the case under discussion there is evidence showing that it was the plain purpose of appellee Edward Kornrumpf to resume business on the termination of the lease. This being his manifest intention at

the time, and this is the true test, the fact that the lease may have covered a longer period of time would not alone affect it. The property, when he was first sick and compelled to abandon his business, was rented for a year. Subsequently it was rented monthly. As there was proof that he could do some work in and about the yard, this improvement in the condition of his health may account for the renting of the saloon subsequently by the month. During this time the lot was used as it had been previously by the family for the purposes of a home, which made it a part of the residential homestead, independently of the question of its abandonment as a place for the head of the family to pursue his business calling.

At no time while it was rented does it appear that Kornrumpf was able, by reason of his mental and physical condition, to transact or resume his former business. It is urged, however, that as he was shown to be without means or credit to carry on his previous business, he could have had no definite intention to resume, and that this constituted an abandonment of the premises. If the proof established the fact that the appellee Kornrumpf's resumption of business depended exclusively on whether he had the means or credit for that purpose, and it was shown that he had neither, the case would be one in which it appeared that there was no definite intention to resume. Bowman v. Watson, supra; Shryock v. Latimer, supra. But in the present case, while there is evidence to the effect that appellee Kornrumpf was not at the time financially in a condition to carry on his business, it does not appear that his resumption of the business depended solely on this contingency. On the contrary, it is evident from the proof that if he had possessed the requisite money or credit he could not have carried on his occupation, because the same reason which necessitated its cessation (his ill health) still continued, and incapacitated him for the transaction of his former business.

In the case of Shryock v. Latimer, supra, "the fact that Latimer contemplated, if he ever became able to do so, to resume the business of a merchant," it was said, "did not give him that character if it did not in fact exist." This circumstance, coupled with the important fact that he was engaged in other business, in the exercise of which the store house claimed in that case as exempt was not necessary, operated as an abandonment of it. The record before us does not disclose that character of proof.

The fact that the head of the family in a case like the present is unable, by reason of financial embarrassments, to resume business on his own capital might be sufficient to support a verdict finding that there was no definite intention to return to his former calling. But to give this fact alone the effect contended for, it seems to us would entirely destroy the force and weight of plaintiffs' evidence showing that it was

his purpose to resume, and would make it a conclusive presumption of law.   It does not necessarily follow, from the fact that the head of the family was without means or credit to resume, that his intention to do so was indefinite or impossible of execution.   He might have (in so far as he was affected by this) engaged in his former business as a retail liquor dealer on commission, and the protection to the property afforded by the exemption would have been unchanged.

We conclude, that there is sufficient evidence in this case to show a continued use of the lot for the purposes of a home during the period the saloon was rented, and that the cessation of the use of the saloon building as a place of business was not with the intention on the part of the head of the family to discontinue his regular calling; and that the evidence is sufficient to support the finding, in effect, that the property was temporarily rented, with the intention then to return to his business vocation upon the recovery of his health.

That portion of the court's charge is complained of which informed the jury that "the temporary renting of the homestead will not change its character when no other homestead has been acquired."   The objection to this instruction is, that there was no evidence to warrant it, as the homestead was not in controversy, etc., and that it was calculated to mislead the jury to the prejudice of appellants.   There was evidence that appellees had no other homestead, and it can not be said, therefore, to be a charge outside of the testimony.   It is true, that there was no controversy or issue as to the acquisition of another homestead by appellees, and the criticism upon the charge may be correct.   Still, we do not think, as the record presents this case, that it could have misled or influenced the jury.   It was followed by a charge, in substance, that if Kornrumpf used the lot as a place of business, and had retired therefrom, and had rented it permanently since, and had not used it for the purposes of a home, the jury would find for defendants. The language of the constitutional provision relating to the temporary renting of the homestead when no other home had been acquired, contained in the charge, could not have affected the jury, we think, under the facts of the case, and in view of the subsequent paragraph of the charge.

We think the judgment should be affirmed.

*Affirmed.*

Adopted April 26, 1892.