In re PRESNALL.

(District Court, W. D. Texas, San Antonio Division. February 16, 1909.)

No. 404.

HOMESTEAD (§ 168*)—EXEMPTION OF BANKRUPT—ABANDONMENT.

Under Const. Tex. art. 16, § 51, providing that a residence homestead in a city shall consist of lot or lots, not exceeding $5,000 in value, when devoted to that purpose, "provided, that the same shall be used for the purposes of a home; * * * provided, also, that any temporary renting of the homestead shall not change the character of the same when no other home has been acquired," as construed by the courts of the state, a bankrupt did not abandon a homestead right once acquired by verbally renting the property to his daughter from year to year for use as a boarding house, reserving a room in which he and his wife remained as boarders nor by a lease for similar purposes for a term of years, after making which he and his wife moved out, but without acquiring any other home, and with the expressed intention of retaining their homestead right, and of returning to the property as a home on the expiration of the lease.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 333, 334; Dec. Dig. § 168.*]

In Bankruptcy. On review of decision of referee.

Graham Dowdell, trustee of the bankrupt's estate, has filed a petition to review the order of the referee, requiring him to set apart to the bankrupt the following described property as his homestead: Lot No. 4, in city block No. 179, on the west side of Garden street, fronting 30 varas on said street, and running back between parallel lines to the San Antonio river for depth, known as "Presnall Place," No. 215 Garden street, situated in the city of San Antonio, Bexar county, Tex. The record contains the findings of fact and conclusions of law of the referee, as follows:

"Findings of Fact.

"I find that in 1885 the bankrupt bought the lot in controversy, paying therefor less than $5,000, and moved into the property with his family, consisting of himself, wife, daughter, and son, and continued to live upon the property, using same exclusively as a homestead, until the year 1895, when he leased the property to Mrs. Steffian for a year, and with his family moved to Dimmitt county, where they lived upon property which the bankrupt held under lease for 10 or 11 months, when the family returned to San Antonio and boarded in a different part of the city for 2 or 3 months, when they returned to resume their occupancy of this property, and that during the year 1896 the bankrupt and his wife rented this property to their daughter, Mrs. Gertrude Wooley, for the purpose of conducting a boarding house therein; the bankrupt, however, reserving the right to use a room, with the use of the parlor, dining room, stables, and other portions of the property in common with other boarders renting rooms from Mrs. Wooley.

"I find that Mrs. Wooley continued to rent said property from the bankrupt and his wife from the year 1896 to 1902 under a verbal lease, and that in 1902 a written lease was given by the bankrupt to Mrs. Wooley, in order that she might sublease the property to Messrs. Tenny & Lewis, who occupied the property under sublease for a year or more, using same for the purpose of conducting a boarding house, and at the expiration of their occupancy Tenny & Lewis surrendered possession of the property to Mrs. Gertrude Wooley, who then continued to occupy same and to conduct a boarding house therein up to September 30, 1907.

"I find that during the period of time from 1896 to September 30, 1907, the bankrupt and his wife continued to live in said house as boarders of the lessees, and with only the same privileges accorded them as were given to the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

boarders, with the exception that the bankrupt and his wife were allowed to bring their guests into the house and have them lodged and fed without cost to the bankrupt or his wife.

"I find that during said period of time the entire management and control of the property were vested in the lessees, and that neither the bankrupt nor his wife owned any of the furniture with which said house was furnished.

"I find that on September 30, 1907, the bankrupt and his wife executed a written lease to Mrs. Wooley, to run for a period of four years from that date, in order to enable her to sublease the property to Mr. M. B. Hutchins, and that on the same date the property was leased to said Hutchins for the purpose of conducting a boarding house or hotel for a period of four years, and that the bankrupt and his wife and his daughter, Mrs. Wooley, thereupon left said property and moved into the house owned by Mrs. Wooley, where they are now residing, and that during the period of said Hutchins' lease he has the exclusive management and control of said property, and neither the bankrupt nor any member of his family has any right to use the same for homestead purposes. I find that, when the bankrupt and his wife left the home, they did so with the expressed intention of returning thereto at the expiration of the Hutchins lease, and I find that they left the property because it had become unsuitable as a home, because of its use as a boarding house and the condition of Mrs. Presnall's health, but with the intention to return to same for the purpose of holding the property as a homestead against creditors.

"I find that a two-story addition of 7 rooms was made to said house in 1897 for the purpose of accommodating more boarders, that in 1898 a second addition of 4 rooms was made to said house for the same purpose, and that in 1899 a third addition of 5 rooms for the same purpose was made to the house, and that in 1904 a fourth addition, consisting of a one and two story frame addition, was added to said house, and that all of said additions were made for the purpose of accommodating more boarders, and that at the present time the size of said house has been increased from 8 rooms to something like 42 rooms, and that said property is better adapted for use as a hotel than as a homestead for a family of two or three; but I find that, owing to the fact that said additions have been made to the original structure and are not separate therefrom, the original property is incapable of segregation from the structures erected for the purpose of accommodating more boarders.

### "Conclusions of Law.

"(1) By reason of the facts found, I am of the opinion that the property in controversy is, under the laws of this state, the homestead of Jesse Harrison Presnall and Ada H. Presnall, and that they have never abandoned same as such.

"(2) I find that they intend to return to said property and use it as a home at the expiration of the present lease to Hutchins.

"(3) I find that, inasmuch as the entire lot upon which this house is located constitutes the homestead of Presnall and wife, and the original building cannot be segregated from the additions thereto, the bankrupt is entitled to have set apart to him as exempt the whole of the property in controversy.

"Guy S. McFarland."

It is proper to add that the verbal lease, executed by the bankrupt and his wife to their daughter, Mrs. Wooley, extending from 1896 to 1902, mentioned in the findings of the referee, was from year to year. The record also discloses that, up to the time of the written lease executed to Hutchins, the bankrupt used the barn immediately in rear of the main building, and that Mrs. Presnall cultivated flowers in the yard. Further, it is shown that the property in controversy is the only home owned or claimed by the bankrupt since it was acquired in 1885. The order of the referee, setting apart the property to the bankrupt as his homestead, was made June 8, 1908, and about the 1st of November following the leases, executed between the Presnalls and Mrs. Wooley and between Mrs. Wooley and M. B. Hutchins, were canceled by mutual agreement of the parties, and the Presnalls resumed possession of the 215 Garden street property. They are now occupying and using the property as their home and are renting rooms to persons desiring board.

George R. Gillette, Wm. Aubrey, and Graham Dowdell, for trustee. Earl D. Scott and John Sehorn, for bankrupt.

MAXEY, District Judge (after stating the facts as above). The question to be determined is whether the property in controversy should be set apart to the bankrupt as his homestead. By article 16, § 51, of the Constitution of this state, it is provided:

"The homestead in a city, town or village, shall consist of lot or lots, not to exceed in value five thousand dollars at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other home has been acquired."

The jealousy with which homestead rights are protected by the laws of Texas is aptly illustrated by the following language of Mr. Chief Justice Hemphill in Shepherd v. Cassiday, 20 Tex. 30, 70 Am. Dec. 372:

"The homestead is not to be regarded as a species of prison bounds, which the owner cannot pass over without pains and penalties. His necessities and circumstances may frequently require him to leave his homestead for a greater or less period of time. He may leave on visits of business or pleasure, for the education of his children, or to acquire in some more favorable location means to improve his homestead, or for the subsistence of his family; or he may intend to abandon, provided he can sell. But let him leave for what purpose he may, or be his intentions what they may, provided they are not those of total relinquishment or abandonment, his right to the exemption cannot be regarded as forfeited."

In the present case it is insisted by the trustee, first, that the property in its entirety was abandoned by the bankrupt and his wife as a homestead; or, second, if the entire property was not abandoned, there was a partial abandonment of so much of the building as was leased or rented for boarding house purposes. Did the renting, by the bankrupt and his wife to their daughter, Mrs. Wooley, from year to year for the period from 1896 to 1907, operate, under the facts of this case, as an abandonment, for homestead purposes, of the property which had been used exclusively as a home since the erection of the building in the year 1889? The word "abandonment" implies desertion, relinquishment, and as applied to a homestead the abandonment, or desertion, must be coupled with the fixed intention not to return. The evidence here shows that the bankrupt and his wife, throughout the period of control of the property by the daughter, occupied a room in the house as boarders, and used the parlors and dining rooms, hallways, and barn as other boarders, and that they had no intention of abandoning the property as their homestead. In 1907 a written lease for four years was executed to the daughter, and she in turn leased the property for the same period to Hutchins. From the date of the execution of this lease the bankrupt and his wife resided with their daughter, in a house across the street from the property in controversy, until November, 1908, when the two leases were canceled and they returned to the property. The referee finds as a fact that, when the bankrupt and his wife left the home, "they

did so with the expressed intention of returning thereto at the expiration of the Hutchins lease," and that they left the property "because it had become unsuitable as a home on account of its use as a boarding house and the condition of Mrs. Presnall's health, but with the intention to return to the same for the purpose of holding the property as a homestead against creditors."

Does the evidence disclose an abandonment of the property for homestead purposes? The rule as to abandonment is clearly stated by Judge Hodges in Sykes v. Speer (Tex. Civ. App.) 112 S. W. 426, as follows:

"When a homestead character once attaches to property, it will continue to be the homestead till the owner voluntarily changes its character by disposing of the property, or by leaving with the intention of not returning and occupying it as a home. Baum v. Williams, 16 Tex. Civ. App. 407, 41 S. W. 840; Gunn v. Wynne (Tex. Civ. App.) 43 S. W. 292; Fyffe v. Beers, 18 Iowa, 11, 85 Am. Dec. 581. * * * Abandonment is accomplished, not merely by going away without any intention of returning at a particular time in the future, but by going away with the definite intention never to return. Foreman v. Meroney, 62 Tex. 726; Holland v. Zilliox, 38 Tex. Civ. App. 416, 86 S. W. 37; Thomas v. Williams, 50 Tex. 271. In every case abandonment is to be regarded as a question of fact, to be ascertained from all the circumstances surrounding the particular transaction. The intent of the parties in leaving the homestead is the controlling fact. Cline v. Upton, 56 Tex. 319. When no other homestead has been acquired, 'it must be undeniably clear, and beyond almost the shadow at least of reasonable grounds of dispute, that there has been a total abandonment with an intention not to return and claim the exemption,' before an abandonment will be found. Gouhenant v. Cockrell, 20 Tex. 97; Cantine v. Dennis (Tex. Civ. App.) 37 S. W. 186. The first case cited, in which the language quoted was used, has been cited with approval in numerous cases since."

And it is said by Mr. Justice Field, in Hurt v. Hollingsworth, 100 U. S. 104, 25 L. Ed. 569:

"According to the decisions of the Supreme Court of Texas, it would appear that, in order to work a forfeiture of the right to the homestead, the owner's cessation of occupancy must be with an intention of total relinquishment, shown by clear and decisive circumstances."

That the renting of a part of a building for boarding house or mercantile purposes, while the owner occupies the remainder of the building as his home, does not operate as an abandonment of any part of the structure as a homestead, has been expressly decided by the courts of this state. Thus it is said in King v. Hapgood, 21 Tex. Civ. App. 217–220, 51 S. W. 532, using the words of the syllabus:

"A three-story building occupied by a debtor, who uses a portion of it for a boarding house and leases a part for mercantile purposes, together with so much of a one-story building adjoining as has not been devoted to other purposes, may be claimed exempt as the residence homestead of the occupant."

At page 220 of 21 Tex. Civ. App., page 534 of 51 S. W., language more emphatic was employed by Judge Pleasants, who delivered the opinion of the court. "That the three-story building," said the learned judge, "and so much of the one-story as had not been devoted to other purposes, constituted the residence homestead of the appellants King and wife, there can be no question." See Forsgard v. Ford, 87 Tex. 185, 27 S. W. 57, 25 L. R. A. 155; Harle v. Richards, 78 Tex.

80, 14 S. W. 257; Pryor v. Stone, 19 Tex. 371–374, 70 Am. Dec. 341; Lang v. Fritz (Tex. Civ. App.) 38 S. W. 233; Farmer v. Hale, 14 Tex. Civ. App. 73, 37 S. W. 164; Newton v. Calhoun, 68 Tex. 451, 4 S. W. 645. See, also, Hinzie v. Moody, 13 Tex. Civ. App. 193, 35 S. W. 832; Brennan v. Fuller, 14 Tex. Civ. App. 509, 37 S. W. 641; Billings v. Matlage, 36 Tex. Civ. App. 619, 82 S. W. 805; Malone v. Kornrumpf, 84 Tex. 454, 19 S. W. 607; Duncan v. Ferguson-McKinney Co., 150 Fed. 269, 80 C. C. A. 157, 18 Am. Bankr. Rep. 155; In re Harrington (D. C.) 99 Fed. 390; Rollins v. O'Farrel, 77 Tex. 90, 13 S. W. 1021; Foreman v. Meroney, 62 Tex. 723.

Counsel for the trustee refer, among other authorities, to Medlenka v. Downing, 59 Tex. 32, Wynne v. Hudson, 66 Tex. 1, 17 S. W. 110, Hargadene v. Whitfield, 71 Tex. 482, 9 S. W. 475, and Blum v. Rogers, 78 Tex. 530, 15 S. W. 115, in support of their contention that the building occupied by the bankrupt and his wife, having been rented in part for a boarding house, was thereby abandoned and lost its character as a homestead. This class of cases is clearly distinguishable from the one before the court. In the present case is involved but a single house, used partly for the purposes of a home, while the cases cited involved not only the home place, but other buildings erected for the purpose of being rented for mercantile or other purposes. In those cases the owner had abandoned that part of the lot or lots which contained the rented buildings and devoted it to a purpose inconsistent with its use as a homestead. But the significant fact remains that, in all the cases, the head of the family was permitted to retain a home. Wynne v. Hudson and others of that type are explained in Hinzie v. Moody, supra, and in Billings v. Matlage, supra.

Upon a careful consideration of the authorities the court is of the opinion, in view of the facts of this case, that the bankrupt has not abandoned the property claimed by him as a homestead. Having reached that conclusion, it is scarcely necessary to refer to the contention of counsel that, if a part of the house has been abandoned, the part so abandoned should be subjected to the payment of the bankrupt's debts. It may be said, however, that the contention has been disposed of by the Supreme Court of this state in a case the facts of which have direct application to the one now before the court. In Forsgard v. Ford, supra, Mr. Justice Brown, as the organ of the court, propounded the question:

"Can a part of a house standing on a lot that is a homestead be subjected to forced sale under our Constitution and laws?"

The question thus stated was answered in the negative.

For the reasons stated, the order of the referee is affirmed, and the trustee is directed to set apart the property in controversy to the bankrupt as his homestead.