## P. J. WILLIS & BRO. v. D. J. POUNDS ET AL.
### No. 441.

1. **Business Homestead—Fact Case.**—P. conducted a mercantile business in a store house on one of the lots in controversy, had a warehouse used in connection with the business on the other, and kept a hotel elsewhere. Novem-19, 1889, he conveyed these lots and his stock of merchandise to R. This conveyance was without consideration. November 21 Willis & Bro. attached. There was an agreed judgment in the suit for a less sum than was sued for, with foreclosure of the attachment lien upon the lots in controversy, which were thereafter sold under the foreclosure, purchased by Willis & Bro.. and by them leased to P. In a suit between Willis & Bro. and P., these facts held evidence of abandonment by P. of homestead rights.

2. **Effect of a Fraudulent Conveyance of the Business and Business Homestead.**—When a debtor by a fraudulent conveyance divests himself of all his goods and his business homestead, and his subsequent conduct shows intent to discontinue business, his avocation as merchant is at an end, and the deed, though not signed by the wife, is evidence of abandonment of the homestead right.

3. **Residence and Business Homestead — Fraudulent Conveyance of.**—A fraudulent conveyance of a residence homestead, when there was no actual abandonment, will not divest the homestead right; but in order to secure the exemption of a business homestead the business must be kept up, or intent to continue it shown, and when the business is abandoned the homestead exemption protecting the place of business is at an end.

4. **Judgment as an Estoppel.**—An agreement of parties under which a judgment was rendered does not enlarge the scope of the estoppel of the judgment, when it was such as plaintiff would have been entitled to without the agreement.

5. **Effect of an Order of Sale Under a Foreclosure of an Attachment Lien.**—It is the opinion of Mr. Justice Williams that the execution of an order of sale under a foreclosure passes such interest in the property levied on as was subject to the lien, and also has the force of an execution against the particular property, and passes such interest therein as the defendant had acquired between the date of the levy and the sale.

APPEAL from Nacogdoches. Tried below before Hon. JAMES T. POLLEY.

*Ingraham, Ratcliff & Ingraham*, for appellants.—1. The court erred in overruling the plaintiffs' motion for a new trial, in not rendering judgment for plaintiffs for the lots sued on and the proven rents thereof, because the plaintiffs having shown a valid judgment against defendant, an order of sale thereon issued, levied upon the land in controversy, and a deed from the sheriff to said lots and the value of the rents, were entitled to such judgment, unless the defendant showed the land sued for to be his homestead at the time of the levy of the attachment and order of sale, by the preponderance of the testimony; and the defendant did not offer any testimony to show that he had any homestead rights at any time in the land sued for under his plea. Hull v. Naumberg, 1 Texas Civ. App., 132; Tackaberry v. Bank, 85 Texas, 488; Wilson v. Swasey, 20 S. W. Rep., 48; Duncan v. Alexander, 83 Texas, 441; Schryock & Rowland v. Latimer, 57 Texas, 677; Wynne v. Hudson, 66 Texas, 1; Hargadine v. Whitfield, 71 Texas, 489; Pfefer v. McKnutt & March, 74 Texas, 641.

2. The court erred in not rendering a judgment for plaintiffs and in overruling plaintiffs' motion for a new trial, because the uncontradicted testimony in the cause shows that if the defendant D. T. Pounds ever had any homestead right in the lots sued for, he had abandoned all such rights before the attachment issued in cause number 5836 of P. J. Willis & Bro. v. D. T. Pounds, and before the judgment in said cause was rendered and before the issuance of the order of sale and the levy thereof and the sale of said lots thereunder to plaintiff. House v. Phelan, 83 Texas, 595; Houston v. Newsome, 82 Texas, 75; Openheimer v. Fritter, 79 Texas, 49; Mayers v. Paxton, 78 Texas, 196; Miller v. Menke, 56 Texas, 539; Inge & Boring v. Cain, 65 Texas, 75; Willis & Bro. v. Morris, 66 Texas, 634; McDonald v. Campbell, 57 Texas, 614; Willis & Bro. v. Mike, 76 Texas, 82; Wood v. Chambers, 20 Texas, 247; Cox v. Shropshire, 25 Texas, 113; Martel v. Somers, 26 Texas, 559; King v. Harter, 70 Texas, 579; Clift v. Kaufman, 60 Texas, 64; Clint v. Upton, 56 Texas, 320; Griffith v. Maxey, 58 Texas, 214; Gassoway v. White, 70 Texas, 475.

3. The defendant D. T. Pounds had abandoned all his homestead right in the lots sued for on the 4th day of October, 1890, the date of the levy of the order of sale on said lots. The tenant can not dispute the title of his landlord. Lyles v. Murphy, 38 Texas, 78; Jones v. Gillespie, 26 Texas, 347.

No brief on file for appellees.

WILLIAMS, ASSOCIATE JUSTICE.—This appeal is taken from a judgment rendered in favor of the defendant in an action of trespass to try title, brought by appellants, to recover two lots in the town of Garrison, which are claimed by appellants under a purchase made by them at a sale

by the sheriff under an order of sale foreclosing a writ of attachment in their favor, and against D. T. Pounds, which had been levied on the lots, and which are claimed by Pounds as his business homestead, exempt from such writs.

The facts upon which the decision depends are the following: Prior to November 19, 1889, D. T. Pounds owned the lots in controversy, and upon one of them had a store house, in which he conducted a mercantile business, and on the other of which he had a warehouse, used in connection with such business. He was also engaged in keeping a hotel in other property. Whether this was his residence or not, the evidence does not show.

At the date mentioned Pounds executed and delivered to one Ross a deed conveying to him absolutely, for a recited cash consideration of $3257.83, the two lots and his entire stock of goods, wares, and merchandise, of which an inventory was taken and delivered to Ross. This deed was acknowledged November 19, and was filed for record December 5, 1889.

On November 21, 1889, Willis & Bro. caused an attachment to be issued from the District Court of Nacogdoches County and levied upon the two lots, and also upon the stock of goods. After the levy was made, Ross, who in fact paid Pounds nothing for the property conveyed to him, "turned the lots back" to Pounds. Pounds occupied the house on the lots up to the time the stock of goods was attached by Willis & Bro., but how or for what purpose he did so was not further shown. There is no evidence that at any time since the conveyance to Ross Pounds has ever used the houses or lots as a place for conducting any business, his only business since then being that of a hotel keeper.

In the attachment suit Pounds filed a general denial, and on the 27th of March, 1890, his attorney therein signed an agreement with the attorneys representing Willis & Bro., by which it was stipulated, that the plaintiffs should take judgment for $3328.97, a less sum by several hundred dollars than was then due according to the allegations of the petition, and that the attachment lien on the lots should be foreclosed and an order of sale issued thereon; the proceeds of the goods, which had been sold, being applied as a credit on such judgment. Judgment was entered on the same day in accordance with this judgment. At sometime during the same year Pounds took a lease from Willis & Bro. for the lots, for a term extending to November 1, 1891, acknowledging tenancy under them, and agreeing to pay the taxes in lieu of rent. Since that time the houses on the lots have been rented by Pounds to other parties, who carry on business therein in which he is not interested, and such lots have not been otherwise used by him.

On the 4th day of October, 1890, an order of sale was issued on the decree of foreclosure for the sale of lots, which was levied on the same

day, and was returned with the levy endorsed, but not fully executed for the want of time. Another order of sale was issued January 16, 1891, reciting the levy under the previous writ, and directing the sheriff to proceed to sell the property. Under this writ a sale was made on the first Tuesday in March, 1891, at which the plaintiffs bought, and received a deed from the sheriff.

There is no evidence in the record that Pounds was at any time a married man or the head of a family.

The rents of the property after the expiration of the lease and up to the trial below were shown to be worth $240.

*Conclusions of Law and Opinion.*—The plaintiffs show a complete title to the property under Pounds, and as there is no evidence that Pounds was ever the head of a family so as to entitle him to the exemption claimed, the judgment in his favor was erroneous and must be reversed.

Assuming that he was the head of a family, still the evidence leaves it doubtful as to whether the property in which he conducted his business as a merchant or that in which he kept his hotel should be exempted as his place of business. If the latter was his residence homestead, this would probably settle this question, and, barring other objections, would entitle him to the exemption of the place of his mercantile establishment.

But conceding this, a question as to the extent of such exemption is still left indefinite by his evidence. It is rendered by no means clear that the warehouse was such a part of the place for conducting his mercantile business as to include it within his exemption. McDonald v. Campbell, 57 Texas, 614; Hinzie v. Moody, 1 Texas Civ. App., 26.

These objections are such as might perhaps be met by fuller proof, and were there no other reasons for deciding against appellee's claim of exemption, it would be proper to remand the case for a new trial.

But if the property was ever exempt, the facts show such an abandonment of the business, upon which the exemption depended, as to put an end to the privilege.

There can be no doubt that at the several dates of the judgment, of foreclosure of the lien, of the orders of sale, and of the sale by the sheriff appellee had completely and unequivocally discontinued his vocation as merchant, and the property was not used by him for the carrying on of any business whatever. Whether the state of facts as they existed at these dates, or as they stood at the date of the levy of the attachment, is to be considered in determining the rights which plaintiffs acquired under their purchase, is a question upon which the court finds it unnecessary to express an opinion, holding that the abandonment had taken place before the attachment was levied.

By his deed to Ross, Pounds divested himself of title, not only to the goods, but, if he had no wife, to the lots. The goods were his only

means of maintaining his mercantile business and preserving his exemption of a place at which to carry on such business. That this was done with the intent to discontinue such business is shown both by the character of the deed and by his subsequent conduct, which may be considered for the purpose of ascertaining his intent at the time the deed was made. This act of his put it out of his power to continue a business of his own on the premises; for as against him it passed to Ross the title in the goods and, if he had no wife, in the lots. The necessary effect of this was to discontinue his own business which he had previously conducted. His avocation thereafter was that of hotel keeper, and not of a merchant.

He testifies that he continued to occupy the lots up to the time of the levy of the attachment; but he did not own the business, if it was continued at all, which does not appear. His right in it was ended. If he had a wife, it was nevertheless within his power to divest the exemption by such acts as constituted an abandonment of the premises. Wynne v. Hudson, 66 Texas, 1. A deed in which the wife did not join, made while the exemption still existed, might not pass title to the land; yet the deed in question, conveying both land and goods, could have the effect to put an end to the business upon the continuation of which the exemption depended. With the discontinuance of that the exemption fell. The wife could not claim the exemption after it was lost by the act of the husband in abandoning the use of it for his business.

In order to constitute an abandonment of the business homestead there must be a cessation by the head of the family of the business conducted in it, without the intent to resume that or some other business or calling on the same property. Pounds must be held to have contemplated the consequence of his own acts. A conveyance of the goods put an end to the business which he was then conducting, and the facts all show that this was done with intent never to resume it. Tackaberry v. Bank, 85 Texas, 488.

This was the condition of things when the plaintiffs' attachment was levied; and as there was then no exemption of the property in existence, the writ attached to whatever interest there was subject to it.

The deed to Ross was evidently made in fraud of creditors, and as against appellants has no effect. It may be urged that inasmuch as the property was previously exempt, the fraudulent intent with which the deed was made did not affect the conveyance, but the title passed to Ross, and either constituted an outstanding title in him or revested in Pounds by Ross' relinquishing. The answer is, that a simulated conveyance of a homestead, in contemplation of an abandonment of it, and to be held by the grantee for the use of the grantor, for the purpose of covering it up from creditors after abandonment shall have taken place, has no such effect, and that the abandonment was complete when the stock in trade

was conveyed. Cox v. Shropshire, 25 Texas, 113; Beard v. Blum, 64 Texas, 62.

This case is unlike that of Bear v. Blum, supra, in which it is held, that property which constituted the residence homestead of the family would continue such, notwithstanding a conveyance made by the owner with intent to defraud creditors, and with the secret understanding that it would be held by the grantee in trust for the grantor, where there was no actual abandonment; and that such a conveyance did not within itself constitute an abandonment of the homestead right, and that the property was not therefore subject to debts.

Here it is the business homestead that is the subject of exemption, and in order to secure the exemption the business must be kept up. But the stock of goods was conveyed as well as the land, and the business was thereby discontinued, and has never been resumed. The abandonment took place with the sale of the stock in trade with the intent to discontinue the business.

The agreement under which the judgment was taken did not enlarge the scope of the estoppel of such judgment. The homestead right was not put in issue by the pleadings, and the judgment was such only as the plaintiffs therein would have been entitled to without the agreement. It simply enforced such lien as resulted from the levy of the attachment. Mayers v. Paxton, 78 Texas, 196; Willis v. Matthews, 46 Texas, 478; Freem. on Judg., sec. 271.

Appellants' right under the lease need not be considered. Whatever doubt may exist upon the question whether or not there had been an abandonment of the homestead use of the property at the date of the levy of the attachment, there can be none that such an abandonment had taken place at the dates when the levies and sale under the orders of sale took place. The writer is inclined to the opinion, that such writs should have as full effect as to this property as would be given to a levy and sale under an execution, though no authority to that effect has been found. In some of the decisions the question as to title acquired under such a sale is said to depend on the facts as they existed at the time of the levy of the attachment, and in others the inquiry is referred to the facts existing at the date of the levy and sale. These expressions, so far as examined, are in cases where no such point as that involved in this case was presented by the facts, but which necessarily depended upon the conditions existing at the time of the levy, there having been no change in them between the levy and sale.

It is said by Mr. Freeman, that a venditioni exponas gives no new authority, and that a sale under it is the same as though the sale had been made under the original writ before the return day; and that the purchaser gets no better or greater title than would have passed under the original writ. Freem. on Ex., secs. 58, 60.

The authorities referred to by him sustain his text, but none of them involve the question whether or not an interest subject to the writ, possessed by the debtor in the thing sold at the date of the sale, which he did not have at the date of the levy, would pass by such sale. He is treating too of writs issued to require the sheriff to complete simply what he had begun—an execution, and not of orders of sale issued upon decrees of foreclosure.

In Finck v. Roe, 70 California, it is held, that a title acquired by the defendant in execution to the property levied on, between the dates of levy and sale, passed to the purchaser. The rule is said to be, that the title possessed by defendant at the date of sale passed by the sheriff's deed. See, also, Hayes v. Mining Co., 2 Colo., 273.

In Bates v. Bacon, 66 Texas, 348, it is said that the purchaser acquired by the sheriff's deed only the title which the defendant " then had;" but the present question was not involved in the facts of that case.

The question here, however, depends upon the effect to be given to an order of sale issued to enforce the attachment lien, and whether or not it empowers the officer to pass by his sale any interest except that to which the levy originally attached. If the property was a homestead when the levy was made, it was void, and no lien ever arose. Mayers v. Paxton, supra.

The decree of foreclosure would probably add nothing to the right acquired by the levy. But a debt is adjudged against the defendant, and the property is ordered to be sold to satisfy it. The authorities generally lay down the rule, that in such a case the creditor can not proceed generally by execution against the property of the debtor until he has enforced his lien by sale of the property. If such be the rule, why should not the process by which the particular property is to be sold have efficacy to pass the whole title of the debtor subject to the judgment, irrespective of the extent to which the lien attached originally? Why require him to sell once in order to pass a title which the defendant had at some time in the past, and again in order to reach an interest acquired thereafter? If he is restricted to process to enforce his lien before he can get an execution against the property generally, and at the same time is not allowed to subject by such process an interest to which his lien has not attached, he is held to circuitous methods in order to attain what he should in my judgment be allowed to attain in one proceeding, and subjected to the risk of having the property taken from his reach while he is doing all in his power to obtain satisfaction out of it. If, as stated by some authorities, he may waive his lien under such a judgment and proceed directly by execution, why should the law force him to such an alternative instead of giving him complete relief by one simple proceeding? An order of sale under a foreclosure relates back and passes such interest as was subject to the lien foreclosed when it originated, and should in my judgment have the additional force of an execution against such interest as the judgment

debtor has in the particular property at the time of the sale as was not reached by the original levy and foreclosure. No reasons, not merely technical, are seen why this should not be the law.

The cases of Willis v. Matthews, 46 Texas, 478; Mayers v. Paxton, 78 Texas, 196; and Mayers v. Paxton, 23 Southwestern Reporter, 284, did not involve the question here discussed. In the latter case, those claiming the homestead right had sold the property between the levy and foreclosure of the attachment. If the property involved in that case was homestead when levied on, no lien attached; and having been conveyed to other parties before a foreclosure and sale, there was nothing remaining in the defendants in the attachment to pass by such sale.

The judgment of the court below is reversed and here rendered for appellants for the property and for $240 rents.

*Reversed and rendered.*

Delivered March 1, 1894.