### SANGER BROTHERS v. HICKS COMPANY, LIMITED.

Decided January 31, 1900.

**Business Homestead—Abandonment—Deed of Trust—Attachment.**
Where a merchant conveying, by deed of trust, his stock of goods for the security of creditors, with the then existing intention to permanently abandon his business homestead and discontinue business therein, includes his place of business also in the property so conveyed, such deed of trust is valid as to the business homestead, and prevails over the claims of creditors attaching same after the abandonment was completed.

APPEAL from Angelina. Tried below before Hon. TOM C. DAVIS.

*Mantooth & Townsend* and *Boynton & Boynton,* for appellants.

*Branch, Garrison & Blount,* for appellee.

FISHER, CHIEF JUSTICE.—This is an action of trespass to try title, brought by the appellees against the appellants and the Angelina Trading Company. Appellants pleaded general denial and not guilty. The Angelina Trading Company entered a disclaimer. The case was tried before the court without a jury, and judgment rendered in favor of the appellee.

The trial court found the following conclusions of law and fact:

"1. That S. Abrams is the common source of title.

"2. That on the third day of May, 1897, the Hicks Company, Limited, obtained a judgment in District Court of Angelina County against S. Abrams for the sum of $988.92 and foreclosing an attachment on the lands in controversy.

"3. That the attachment was issued and levied on the 15th of December, 1896, on the land in controversy, said attachment being issued and

levied in the suit of Hicks Company v. Abrams, in which the judgment was obtained above.

"4.   The above judgment having become dormant, said judgment and attachment lien was revived by judgment of the District Court of Angelina County, Texas, on the 18th of October, 1898.

"5.   That order of sale for the land in controversy issued on said last named judgment on the 6th of December, 1898, commanding the sheriff to sell the land in controversy, and the return of the sheriff on said order shows that the land in controversy was advertised for sale and was duly and legally sold on the first Tuesday in January, 1899, and that the plaintiffs, the Hicks Company, bought said land for the sum of $200.

"6.   A deed from the sheriff of Angelina County, Texas, by virtue of said last named sale to the Hicks Company, Limited, to the land in controversy.

"7.   I find that on the 17th day of August, 1896, S. Abrams was a merchant, doing business in the town of Lufkin, in Angelina County, Texas, and had been engaged in such business in said town for a number of years prior to said date; that he had no other business or calling except that of a merchant; that he was exclusively engaged in such business; that he was a married man, his family consisting of himself, his wife, and three children, and that the property in controversy was his business homestead on the 17th of August, 1896, and long prior to that time, and was being so used and occupied by him on that date; that on the said 17th of August, 1896, the said S. Abrams was insolvent and wholly unable to pay his debts; that on Saturday, the 15th of August, he returned home from Waco, where he had been to see Sanger Bros. to obtain from them some money to help him in his business; that he arrived at home between 8 and 9 o'clock at night.   On arriving at home he was informed by his clerks that some of his creditors from Galveston had been to Lufkin to see him about what he owed them.   Upon being informed of the visit of his creditors, he went to see Mr. Mantooth, his attorney, about his business affairs.   On Sunday morning following, Abrams received a letter from one of his Galveston creditors, notifying him that it would be to his interest to come to Galveston at once.   Upon the receipt of this letter he, Abrams, became convinced that his Galveston creditors intended to close him out, and upon consultation with his attorney, Mr. Mantooth, he decided to make a deed of trust for the security of a part of his creditors.   The deed of trust was executed, signed, and acknowledged by Abrams on Monday morning after, between 12 and 2 o'clock a. m., and after being so signed and acknowledged by Abrams, was immediately carried by him to C. A. Rush (who was made trustee in said instrument), and the deed of trust, together with the keys of the business house in which the good were situated, were delivered by Abrams to C. A. Rush, the trustee.   The deed of trust conveyed to the trustee all the goods, wares, and merchandise, together with the brick house in which they were situated, and all other property owned by Abrams, except his residence homestead and one horse and buggy.   That the property conveyed was esti-

mated by Abrams to be worth about $30,000 or $40,000; that the creditors secured in the trust deed amounted to between $30,000 and $40,000; that there were a large number of persons that Abrams owed large amounts to, amounting to $25,000 or $30,000, that were not included in the trust deed; that the trustee Rush, immediately upon the delivery to him of the trust deed and keys, accepted the trust and took actual possession of all the property.    That after the delivery of the trust deed, S. Abrams never exercised any control over the business or the house, but entirely abandoned the same as a business homestead.    When S. Abrams was consulting with Mr. Mantooth about making the deed of trust, he was informed by Mantooth that his business house was exempt and that he could not mortgage the same, if he ever intended to resume business.    He stated to Mr. Mantooth, and so testified as a witness, that he never intended to resume business, and intended to abandon and quit business, and wanted the business house put in the trust deed with his other property for his preferred creditors.    There were some efforts made by the friends of Abrams, after the deed of trust was executed, to settle and compromise with his creditors, with a view to his resuming business, but nothing was ever accomplished.    C. A. Rush, the trustee, on the 6th of October, 1896, sold the house and lot in controversy and all the other property conveyed in the trust deed to Sanger Bros.    The Angelina County Trading Company was incorporated and bought or took charge of the stock of goods.    Sanger Bros. and two of S. Abrams' brothers are the stockholders in the corporation.    The corporation was organized some time after Sanger had bought the goods.    S. Abrams is now and has been for some time the manager of the trading company.    However, his management is under the supervision and control of Sanger Bros., to whom S. Abrams is required to make monthly reports as to the business.    The business is being carried on in the house which was the business homestead of S. Abrams.

"I find as a fact that the property in controversy was the business homestead of S. Abrams up to the time that possession was delivered to Rush under the trust deed, and from the time of the delivery of the possession of the business house to Rush, the property has been abandoned by Abrams as a business homestead.

"I find as a fact that at the time of the preparation of the trust deed, and when it was signed and acknowledged, Abrams intended to abandon the house as a business homestead, and went thereby after its execution and delivered possession of the premises to Rush, the trustee.

"My conclusions of the law from the facts are:

"1.    That the property at the time of the execution of the deed of trust being occupied by S. Abrams as a business homestead, the deed of trust as to said property was void.

"2.    The deed of trust being void for the reason of the property being the homestead of S. Abrams at the time it was executed, no subsequent abandonment, nor no intention to abandon it, expressed or declared, can give the trust deed any validity.    A homestead may be sold while the

homesteader is in possession and before the property is abandoned, but no lien can be created upon the homestead while the party remains in possession. No intention to abandon evidenced by preparation and declaration, however strong and convincing, is sufficient. There must be an actual moving off and away from the homestead before a valid lien can be created against it. By the breaking up of his business and abandoning the property subsequent to the execution of the deed of trust, subjected the business house of S. Abrams to the attachment of the plaintiff, and the foreclosure of the attachment, the sale of the property under the order of sale, and the purchase by the plaintiff, vests in the plaintiff the title to the property in controversy."

In addition to the findings of fact, it may be stated that the evidence shows that Abrams, immediately prior to the execution of the deed of trust and after the advice given him by his attorney Mantooth, formed the intention to quit business and to abandon the property in controversy as his business homestead.

The question in the case is whether the property in controversy was abandoned as a business homestead by Abrams prior to and at the time that the deed of trust mentioned in the findings of fact was executed. It is clear from the facts as found by the trial court, in connection with the evidence, that it was the intention of Abrams, immediately before and at the time that the deed of trust was executed, to abandon the property as his business homestead, and to cease and discontinue business therein. If the intention was formed, at the time and prior to the execution of the deed of trust, to permanently abandon the premises as a business homestead, followed by conduct which unequivocally shows an abandonment, and a continuation of the intention previously formed, the doctrine and principle stated in the case of Tackaberry v. Bank, 85 Texas, 488, would apply. And we think, under the undisputed facts in the record and the facts found by the trial court, which we adopt, that the case cited is decisive of the question before us. Therefore, we reach the conclusion that the judgment of the court below should be reversed and here rendered in favor of the appellants.

In view of this disposition of the case, it is unnecessary for us to notice the other questions raised.

*Reversed and rendered.*

Writ of error refused.