## McDOWELL v. NORTHCROSS et al.

(Court of Civil Appeals of Texas. Amarillo. Dec. 20, 1913.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 182*)—PROPERTY PASSING—HOMESTEADS.

A business homestead, if exempt at the date of a general assignment, does not pass to the assignee by virtue of that instrument.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 540–546; Dec. Dig. § 182.*]

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 182*)—PROPERTY PASSING—HOMESTEADS.

Neither a business nor a residence homestead, though afterwards abandoned as such, will pass under a general assignment, if not abandoned until after execution.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 540–546; Dec. Dig. § 182.*]

3. HOMESTEAD (§ 167*)—BUSINESS HOMESTEAD—"ABANDONMENT."

To be an abandonment of a business homestead, the head of the family must cease to use it for the purpose for which it is exempt, and have no present intention to resume business on the property, and hence a general assignment by the owner of the business homestead is not an abandonment where he retained his homestead, and carried on his business subsequent to the assignment.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 331, 332; Dec. Dig. § 167.*

For other definitions, see Words and Phrases, vol. 1, pp. 4–13; vol. 8, p. 7559.]

4. HOMESTEAD (§ 122*)—CONVEYANCE—ESTOPPEL.

A homestead must be conveyed as prescribed by Rev. Civ. St. 1911, art. 1115, and hence the failure of the head of the family to protest against the sale of his business homestead by his general assignee will not warrant an estoppel vesting title to the property in the purchaser.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 220–222; Dec. Dig. § 122.*]

5. HOMESTEAD (§ 177*)—ESTOPPEL TO CLAIM.

So long as the owner is in possession of his homestead, no conduct on his part can estop him to claim the exemption.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 344–347; Dec. Dig. § 177.*]

6. HOMESTEAD (§ 168*)—BUSINESS HOMESTEAD—ABANDONMENT.

Where defendant made a general assignment, and his assignee sold his business homestead, and the person in possession paid only one month's rent to the purchaser, holding the remaining rent until the right to the homestead should be determined, there was no question of abandonment by lease or other contract.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 333, 334; Dec. Dig. § 168.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

7. HOMESTEAD (§ 162*)—ABANDONMENT — INTENT.

The mere intention to again resume business in a business homestead at an indefinite time in the future, dependent upon a contingency which may not happen, does not perpetuate the previous homestead character of the property.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 315–319; Dec. Dig. § 162.*]

8. HOMESTEAD (§ 162*) — BUSINESS HOMESTEADS—ABANDONMENT.

That the owner of a business homestead, who was appointed postmaster, did not carry on the business of postmaster in his homestead, but used another building, does not show an abandonment; public officers being entitled to retain their business homesteads, so that on going out of office they may resume business, and it being presumed that the postal authorities fixed the location. of the post office.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 315–319; Dec. Dig. § 162.*]

Appeal from District Court, Collingsworth County; J. A. Nabers, Judge.

Action by O. L. Northcross and others against T. W. McDowell. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

R. L. Templeton, of Wellington, for appellant. R. H. Templeton, of Wellington, for appellees.

HALL, J. Appellee O. L. Northcross filed this suit in trespass to try title against T. W. McDowell, to recover a storehouse and lot, situated in the town of Dodsonville, Collingsworth county. Plaintiff alleges that on the 15th day of November, 1912, he was lawfully seized of lots Nos. 27 and 28, in block 40, in said town, on which day the appellant entered upon the premises and ejected him therefrom, to his damage in the sum of $500, and the rental value of the property, viz., $25 a month; that said property was purchased from J. B. Castleberry, the assignee of appellant, at the instance of appellant.

The case was tried before the district Judge, without a jury, who decreed the land to J. B. Castleberry, the assignee of appellant. It appears from the statement of facts that appellant, McDowell, was in business on the property involved in the suit, and on the 30th day of January, 1912, executed a statutory assignment, conveying "unto the said J. B. Castleberry all his real and personal estate other than that which is by law exempt from execution." The schedule of property filed with the assignment does not list his home and the property involved in this suit, which he claims as his business homestead, as part of the estate delivered to the assignee. After the execution of the assignment, the assignee, Castleberry, took charge of the property, consisting of dry goods and groceries, then located in the business homestead. The business homestead was a double house, situated upon adjoining lots; one of the compartments containing dry goods, and the other groceries.

From the date of the execution of the assignment until some time in August following the appellant continued to carry on the business. It appears that, soon after the execution of the assignment by an agreement between the creditors and the assignee, appellant was permitted to carry on the business, upon condition that he would turn the proceeds over to the assignee. He testified that the assignment was made for the purpose of letting the business run on while he endeavored to pay out, and it appears that it was understood, if he could pay the creditors by conducting the business, it was to be redelivered to him. Having failed to satisfy the creditors, the property was, about the 25th of September, taken into possession by the assignee, and sold at public auction. In this sale was included the house and lots to appellee Northcross. Becoming dissatisfied with his purchase, Northcross subsequently reconveyed the property to the assignee, and this contest is between the assignee, Castleberry, and appellant. Appellee has filed no brief. The appellant's brief does not comply with the rules in many particulars; but, since there is no objection to its consideration, we have decided to pass upon the assignment and propositions presented.

The questions for consideration are: Did the business homestead pass by virtue of the assignment? If not, has it been abandoned as a business homestead since the execution of the assignment? And if so, did the sale by the assignee on September 12th divest appellant of all title?

[1-3] The rule is that, if a business homestead is exempt at the date of the assignment, it did not pass to the assignee by virtue of that instrument. City National Bank v. Merchants'National Bank, 7 Tex. Civ. App. 584, 27 S. W. 848; L. L. & G. Ins. Co. v. Ende, 65 Tex. 118. It is held, in Wynne v. Hudson, 66 Tex. 1, 17 S. W. 110, that residence property does not pass to the assignee, even though it is afterwards abandoned as a residence homestead. In order to constitute an abandonment of a business homestead, the head of the family must cease to use it for the purposes for which it is exempt, and have no present intention to resume business on the property. Tackaberry v. Citizens' National Bank, 85 Tex. 488, 22 S. W. 151, 299; Sanger Bros. v. Hicks, 22 Tex. Civ. App. 473, 56 S. W. 775; Willis v. Pouns, 6 Tex. Civ. App. 512, 25 S. W. 716. It is held, in Alexander v. Lovitt, 56 S. W. 685, that the intention to resume business and occupy the business homestead upon a cessation of business must continue to exist, but that the question of intent is one of fact. Stayton, Chief Justice, in Tackaberry v. Citizens' National Bank, supra, said: "The business. was practically destroyed by the conveyance [assignment] of the things necessary to its existence, and the same inferences as to discontinuance of business ought not to be

drawn in the two cases solely from the fact that an assignment was made. If it was shown that the business, however, was carried on until the very moment the deed became operative, we do not see that, upon principle, the result would be different, for all persons making such conveyances do so with the knowledge that the act, in its consummation, destroys the business, and must be held to have contemplated the result. Thus is furnished one of the facts on which abandonment must depend." In this case, Mrs. Tackaberry included her business homestead with the personal property in the schedule. The opinion continues: "It is fairly evident that the assignor did not understand that it was her duty to make a schedule of all her property, exempt and unexempt, and while, as before said, the schedule cannot be made to convey property exempted from the operation of the deed, it may be true that it ought to be looked to, in the light of the facts of the case, to ascertain what she understood to be exempt property, and therefore not conveyed. She must be supposed to have comprehended the facts on which exemption depended, and it is not unfair to infer, when she omitted from the schedule property clearly exempted, that she understood the situation of the schedule property to be such that exemption could not be given to it; that the business had ceased, without intention to resume it, or to begin and prosecute some other on the property, through which exemption might be continued even after temporary suspension. The exception in the deed has effect without bringing the property in controversy within its operation, and we are of opinion that the trial court, under the evidence, might have found that the business ceased before the delivery of the deed, and was bound to find in any event that it ceased simultaneously with the delivery of the deed, and, in view of the judgment, it ought now to be presumed that such was the finding. The evidence shows beyond controversy that the assignor had no fixed intention at any time, either to resume the business she had formerly carried on, or to conduct some other business on the lots such as would have continued the exemption, notwithstanding a temporary cessation."

The record in this case discloses a different state of facts altogether from that found in the Tackaberry Case. Here the deed of assignment expressly reserves all exempt property, and the intention of appellant not to abandon his business homestead is clearly shown by the fact that he undertook to carry on the business for six or seven months after the execution of the instrument in an effort to save his business from his creditors. While it is true that the effect of a statutory assignment is to divest the assignor of all title to the property, yet this fact, when considered in connection with his positive testimony that he never intended to abandon the

business homestead, but intended to resume business, and reoccupy the premises, as soon as he was able, rebuts the idea of abandonment at the time the assignment was executed, and the rule announced by Judge Stayton, to the effect that, if it was shown that the business was carried on until the very moment the deed became operative, the result upon principle would not be different, because all persons making such conveyances do so with the knowledge that such act destroys the business, has no application. The only fact in this record which tends to show any intention on the part of the appellant to abandon his business homestead occurred after the execution of the assignment, and is found in the evidence of the assignee, Castleberry, and one Nesbit, who was the representative of one of the appellant's creditors. Nesbit's testimony is in part as follows: "I had an agreement with Mr. McDowell, acting for my house, before we accepted under the assignment, in regard to the lots and house upon which the business was being conducted. It was an agreement with Mr. McDowell in person that he was to turn over the store building or the building in which he did business to the creditors, and the understanding between us at the time was that there was something against the lots. The understanding I had with him was that he had bought them from the Townsite Company, and that he still owed something on the lots, and it was understood that whatever was on the lots to the Townsite Company would still stand against them, and be assumed by the creditors. He agreed that the house and lots were to be turned in to the creditors, and we accepted under the assignment on that agreement." If this amounted to abandonment, then under the rule announced in Wynne v. Hudson, supra, it would not pass the title to the assignee, though it might subject it to forced sale. It appears that only two of several creditors had any such understanding with appellant, and it further appears that the creditors neither assumed nor paid the balance due on the business homestead, but that it was subsequently discharged by appellant himself. Appellant never executed any other instrument conveying the property to the assignee, nor was it ever added to the schedule filed by the assignee. It is clear, from the facts and the authorities which we have cited, that the title to the property in question never passed from appellant to the assignee, either at the time of the assignment, or subsequent thereto. The court filed no findings of fact and conclusions of law, and we are at a loss to know upon what theory judgment was rendered against appellant.

[4] If it was his business homestead, and continued to be up to the time of the sale, the fact that he stood by and made no protest while the assignee sold the property at public outcry could not divest him of the title, even if Northcross was contending for

the validity of such conveyance. Since Northcross reconveyed, and is now, as we conclude from this record, asserting no title whatever to the property, we must hold that, as between appellant and the assignee, the title is still in appellant. If we accept the testimony of the assignee, to the effect that appellant promised, as soon as the property was paid out, that it should be sold for the benefit of the creditors, as true, yet the fact remains that no such conveyance to him has ever been made, and neither this promise nor his silence on the day of the sale will have the effect of estopping him, or waiving any part of a homestead exemption. The homestead must be conveyed in the manner prescribed by Revised Statutes 1911, art. 1115. Morris v. Wells, 27 Tex. Civ. App. 363, 66 S. W. 248. Northcross is not pleading estoppel or fraud as against appellant.

[5] Nor can this be set up successfully by the assignee in behalf of the two creditors who claim a waiver on the part of appellant before they would consent to accept under the assignment. There can be no estoppel to claim a homestead while the owner is in possession. Farmers' State Bank v. Farmer, 157 S. W. 283(6). The record discloses that appellant is a married man, and while in actual possession of the property, using the same as a business homestead, no promise or representation made by him could defeat his constitutional exemption. The creditors in the instant case cannot ignore the notice conveyed by the actual use and possession of the property.

[6] We have searched the record closely for the purpose of ascertaining whether or not there were any facts authorizing the court to conclude that the business homestead had been abandoned, or the appellant's rights thereto waived. It appears that soon after the sale appellant continued to conduct the business as before, accounting to the assignee for the proceeds; but it is not shown that he received any rents during that time. For three months after the sale by the assignee the property was occupied by Brown, the purchaser of the stock, who paid the first month's rent to Northcross; rent for the remaining two months has not been paid, but is held by Brown, pending the result of this litigation. So there can be no question of abandonment by lease or other contract, indicating an intention on the part of appellant to abandon. Hargadene v. Whitfield, 71 Tex. 482, 9 S. W. 475.

[7, 8] It is true that appellant is now occupying part of another building; but the evidence discloses that he has been appointed postmaster, and we may presume that as an official his location has been fixed by the Post Office Department. If so, the rule announced in Schoellkopf v. Cameron, 19 Tex. Civ. App. 593, 47 S. W. 548, applies. In that case a shoemaker was elected county treasurer, and during his term of office occupied a room in the courthouse, as-

signed him by the commissioners' court. In rendering its opinion, the court said: "There are decisions to the effect that one engaged in the performance of his public duties as an officer is entitled to a plea of business wherein he may perform those duties, and that the statute would exempt such a place where his official duties were performed from forced sale; but there is no decision holding in terms that the election to an office and the performance of the duties required of the officers, of itself, will necessarily operate as an abandonment of any previous business in which the officer may have been engaged." Even if we are wrong in presuming that his location in another building as postmaster has been fixed by the Post Office Department at Washington, still the evidence fails to disclose that he was free to transfer the post office to his own building. The rule seems to be settled in this state that the mere intention to again resume business in a business homestead at an indefinite time in the future, dependent upon a contingency which might never happen, does not retain and perpetuate the previous homestead character of the property. Shryock v. Latimer, 57 Tex. 674; Hill v. Hill, 85 Tex. 103, 19 S. W. 1016; Hull v. Naumberg & Co., 1 Tex. Civ. App. 132, 20 S. W. 1125. But it is said in the case of Malone v. Kornrumpf, 84 Tex. 454, 19 S. W. 607: "It is urged, however, that, as he was shown to be without means or credit to carry on this previous business, he could have had no definite intention to resume, and that this constituted an abandonment of the premises. If the proof established the fact that the appellee Kornrumpf's resumption of business depended exclusively on whether he had the means or credit for that purpose, and it was shown that he had neither, the case would be one in which it appeared that there was no definite intention to resume. * * * But in the present case, while there is evidence to the effect that appellee Kornrumpf was not at the time financially in a condition to carry on his business, it does not appear that his resumption of the business depended solely on this contingency. * * * The fact that the head of the family, in a case like the present, is unable, by reason of financial embarrassments, to resume business on his capital might be sufficient to support a verdict finding that there was no definite intention to return to his former calling; but to give this fact alone the effect contended for, it seems to us, would entirely destroy the force and weight of plaintiff's evidence showing that it was his purpose to resume, and would make it a conclusive presumption of law. It does not necessarily follow from the fact that the head of the family was without means or credit to resume, that his intention to do so was indefinite or impossible of execution." While we might reason-

ably infer from this record that at the time of the assignee's sale appellant was without funds, and the presumption might be extended to include a want of credit at that time, it is not shown that such condition existed to the time of the trial, and the burden was upon appellees to establish that fact by affirmative proof.

Because the uncontradicted testimony shows that the title to the property in controversy never passed to the assignee at the time of the assignment, and because, under the rule announced in Wynne v. Hudson, supra, a subsequent abandonment would not pass the property to the assignee, and for the further reason that the facts are insufficient to show a waiver since the execution of the assignment, or to create an estoppel in favor of the assignee, as the representative of the creditors, the judgment is reversed, and the cause remanded.