## P. Pfeiffer & Co. v. McNatt & March.

### No. 6359.

1. **Business Homestead.**—To constitute a business homestead separate from a residence the head of the family must have a calling or business to which the property is adapted and reasonably necessary, and such property must be used as a place to execute the calling or business of the head of the family.

2. **Same.**—A member of a failing mercantile firm, being a notary public and mayor of the village of his residence, is entitled after the business failure to a place for carrying on his calling as notary and mayor.

3. **Extent of Exemption as Place of Business.**—The place of business must be reasonably appropriate to the business carried on. In the change from the mercantile firm a part of the buildings was leased by the owner to a purpose inconsistent with the owner's use. *Held,* that by such leasing, there being ample space left the owner for the business carried on, it was made subject to execution.

4. **Case in Judgment.**—A mercantile firm used in business two buildings, each twenty by seventy feet, with a common partition wall in which were two connecting arches; one building was of two stories, the other one. After the failure of the firm one of its members, owning the houses, continued the occupancy of the one story building for office as a notary public, etc., leasing out the two story building. *Held,* that the two story building was subject to execution.

Appeal from Montague. Tried below before Hon. F. E. Piner.

The opinion states the case.

*Stephens & Herbert,* for appellants.—To preserve the place of business which is separate and distinct from the home as a part of the homestead, two things must concur:

1. The head of a family must have a calling or business to which the property is adapted and reasonably necessary.

2. Such property must be used as a place to exercise the calling or

business of the head of the family, and the law protects the place of business because it is the place of business, which can not be unless the head of family is occupied in a business to which the property is adapted and reasonably necessary. Shryock & Rowland v. Latimer, 57 Texas, 674.

*Davis & Garnett,* for appellees.

COLLARD, JUDGE.—McNatt & March, merchants, were closed out by attachment November 19, 1884, and still owe about $10,000 which they are unable to pay.

Appellants obtained judgment against them for $1603.91, and on October 9, 1886, levied execution on both the lots and houses in controversy, the same being the individual property of L. C. McNatt. The appellants bought the lots at sheriff's sale for $100, crediting the amount on the judgment, and had deed made to them by the sheriff July 4, 1887. They brought suit for the lots. McNatt set up that the houses on the lots were his business homestead. The case was tried October 21, 1887, the court sustaining the plea of homestead. McNatt had a residence homestead in another part of the town of Burlington; was a married man and the head of a family.

The question of homestead presents more than usual difficulty on account of the indefiniteness of the facts. The two buildings claimed as a business homestead—the west one two stories, the east one one story—are each twenty feet front on the public square, and run back seventy feet; they are frame wood buildings; have a partition wall lengthwise between them, in which there are two arches connecting the rooms. They were so constructed for the business of McNatt & March, and were used by them until they were closed out by attachments. McNatt has not used them for such purpose since. At the time the business was closed out McNatt was mayor of the town of Burlington, which has a population of about 300, and has since been acting as mayor; he was also a notary public and conveyancer, and did about all the conveyancing for the town and vicinity. He had no other place of business except these two houses. As mayor he had to furnish his own office, and for this purpose used the back end of the east room, except when the weather was very cold, when he held court in the west room, where there was a stove. For eighteen months before the trial he permitted the postmaster to use the front end of the east room as a postoffice, he himself sometimes acting as deputy postmaster. He charged no rent for the postoffice. He has a desk and a spool case in the rear end of the west room, where he keeps his notarial papers, does conveyancing, and such work. For six months prior to the trial had special license to practice law, and keeps his law office in these buildings. He says: "In January, 1885, my brother J. B. McNatt, being the owner of a stock of goods, made a contract with me by which he

was to occupy such portion of the west room as I did not need for my office, and agreed to pay me for the use of the house and for such services as I could render him when not engaged in discharging my duties as a notary public, conveyancer, and mayor, the sum of $50 per month, and J. B. McNatt has ever since occupied said west room as a store under said contract."

It is not an easy task to apply the principles controlling a business homestead to this condition of things. It was laid down in Shryock & Rowland v. Latimer, 57 Texas, 677, that "to preserve the place of business which is separate and distinct from the home as a part of the homestead, two things must concur; first, the head of the family must have a calling or business to which the property is adapted and reasonably necessary; second, such property must be used as a place to exercise the calling or business of the head of the family." The same doctrine has been expressed and applied in quite a number of cases. Wynne v. Hudson, 66 Texas, 1; Hargadene v. Whitfield, 71 Texas, 489.

Appellee has several callings and follows all of them for a living— mayor, notary public, conveyancer, and sometimes deputy postmaster; but we can not see that this fact should militate against his rights to have some place protected by law from forced sale where he can do business and support his family. It may be asked, however, should he have more than one such place, or should he have several places protected for several avocations? Could he legally claim one house exempt for the transaction of his business as mayor and deputy postmaster, and another as a notary public and conveyancer? We must answer this question in the negative. But we are met by the fact in this case that these two houses are connected by archways through the partition wall running between them, from which it is suggested that there are not two distinct places used in the exercise of the several callings. We do not think that the fact that the houses were connected by these openings should necessarily control the case. Suppose a man should in this way try to protect a block of business houses by doing a conveyancing business in one corner of one of them. This would be an absurdity; it would be too unreasonable to admit of discussion. The law is intended as a protection to a fair and reasonable claim falling within its provisions; not an unfair and an unreasonable claim. Here we recur to the distinction guarded in the case of Shryock & Rowland v. Latimer, that to entitle the place of business to protection "the head of the family must have a calling or business to which the property *is adapted and reasonably necessary*." This expression and other parts of the opinion of the same purport apply with peculiar force to the case before us. It would be unreasonable to protect McNatt's homestead claim to both of the houses in controversy; they are unreasonably disproportioned to the character of his business, and are in fact unnecessary. Admitting that he has shown a fair claim to

the east one story house used by him as a court room, his claim to the other, the west two story house, should not be upheld merely because he has a desk and a spool case in the back end of it, where he keeps his notarial papers and does conveyancing. Such a claim is unreasonable, and both places are not necessary to his business. He has designated the front part of the west house by renting it as a store house to his brother to purposes inconsistent with its use as an office for a notary public and a conveyancer. Hargadene v. Whitfield, *supra*. This is shown to be no temporary renting; it had continued for eighteen months before the trial and something over six months before Pfeiffer & Co. levied their execution upon it. It was not a suitable place to do conveyancing, at least not as much so as the east room. The east room was large enough for all his purposes as a place of business. To allow him both houses would be to exceed the limits of justice and common sense.

We are therefore of opinion that the judgment of the court below should be reversed and here rendered, protecting to L. C. McNatt the east house and the part of the lot on which it stands, to-wit, 20 feet front on the east part of lot 4 in block 43, in the town of Burlington, Montague County, and running back to the north end of the lot; and adjudging in favor of P. Pfeiffer & Co. the two story house and the ground on which it stands, to-wit, 20 by 70 feet, that is, 10 feet front on the west side of said lot 4 and 10 feet front on the east side of lot 3 in said block, making 20 feet front, and running back 70 feet, so as to include all the ground upon which is erected the said two story framed house.

*Reversed and rendered.*

Adopted October 29, 1888.