## In re O'BRIEN.

(District Court, N. D. Texas, at Dallas. March 1, 1913.)

### No. 907.

BANKRUPTCY (§ 396*)—BUSINESS HOMESTEAD—ABANDONMENT.

Where a bankrupt, who was a tailor, had erected a brick building on the property in question which he divided into two stores, renting one as a drug store and previously using the other as a grocery store, but, having failed in this long prior to the bankruptcy, moved into a house in the rear of the lot in which he continued to carry on his tailoring business, he thereby abandoned the brick building as a business homestead and was not entitled to have the same set aside in bankruptcy as exempt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 659–668, 670; Dec. Dig. § 396.*]

In the matter of the bankruptcy proceedings of M. J. O'Brien. On exceptions of the Blair & Hughes Company to the trustee's report setting aside certain property to the bankrupt as an exempt homestead. Exceptions sustained.

Allen & Flanary, of Dallas, Tex., for trustee.

MEEK, District Judge. The bankrupt, M. J. O'Brien, in his schedules claimed as exempt to him under the laws of Texas, lot 1, block B-624, located at the corner of Washington and Thomas avenues in the city of Dallas. He claimed this property was occupied by him as a family and business homestead. The trustee of the estate filed a report setting apart this property to the bankrupt as the head of a family. Blair & Hughes Company, a creditor of the bankrupt, excepted to the report of the trustee and charged that the bankrupt was not entitled to all this property as a homestead, for the reason that he had abandoned a part of same; that he erected a one-story brick building containing two storerooms, on the corner of the lot, and is and has long been renting these storerooms for profit; that he has not used any part of this brick building as a family or business homestead. This creditor prayed that the bankrupt's claim to this portion of the property as exempt be denied. Depositions were taken before the referee as to the construction and subsequent use of this building on the bankrupt's lot. Thereafter the referee held that the exceptions of Blair & Hughes Company should be overruled and that the entire lot with its buildings

should be set aside to the bankrupt as exempt. Thereupon the creditor asks this review of the action of the referee.

I quote the facts found by the referee from the testimony as follows:

"M. J. O'Brien, the bankrupt, is 65 years of age. He has been a resident citizen of Dallas, Tex., for 15 years. He has always been, and is now, a journeyman tailor, by trade, making his livelihood in the exercise of his said trade. In the year 1889, he purchased a lot in the city of Dallas, Tex., located on the corner of Washington avenue and Thomas avenue, being 50 by 150 feet, upon which was at that time a two-story frame dwelling, fronting on Washington avenue. For this lot with the improvements thereon he paid the sum of $640 in cash. At the time he made this purchase he was at the head of a family consisting of himself, wife, and four sons and three daughters. He bought the lot and dwelling for a home for himself and family and for the purpose of pursuing his occupation of a tailor, moved on it for that purpose in 1889 with his family, and since then he has been occupying without interruption said property as a home, and pursuing, in addition thereto, on said premises his trade and business as a tailor, which consisted principally of cleaning, scouring, and mending clothes. In 1908 he had the dwelling moved to the rear of the lot so that it thereafter faced Thomas avenue, and built over that part of the lot facing Washington avenue a one-story brick building of about 40 feet front and 50 feet in depth, which cost him $1,000. His original purpose and intention was to use this building for a place of business for himself and sons; but, he testifies, he found it too large for his small business as a tailor, so he constructed a wooden partition therein, thus dividing the building into two stores of practically equal dimensions. One of these stores, to wit, the one directly on the corner of Washington and Thomas avenues, he rented to a druggist, who thereafter conducted a drug store therein, and, although it has changed hands several times, it has been continuously since that time, and is now, being used and rented for a drug store. The other half of the building, which had a door in its rear, he has practically used continuously as a place of business for himself until a very short time before the filing of his petition herein.

"At first he conducted therein a tailor shop where he plied his trade, then he went into the grocery business with his son R. T. O'Brien, retaining about 14 feet in the rear thereof for cleaning and pressing clothes. Most of his work, however, was done in his dwelling; the rear door of the grocery store being used as a means of ingress and egress to that portion of the lot upon which his dwelling was situated. The grocery store was under the management of the bankrupt's son, the bankrupt furnishing the capital therefor. It soon proved a failure, and he, as he testifies, 'went broke' in the early part of 1908. It was thereafter rented to one Wadlington, who took a lease on the premises, and it was thereafter successively occupied by Cern, Dendiger, and others, who also conducted a small grocery business therein, which, like that conducted by the bankrupt and his son, they did apparently without success. The bankrupt, however, continued his tailoring business in his dwelling upon which he had his sign as a tailor. His customers usually came through the grocery store to its rear door, which was their most convenient mode of access to the dwelling. There was no fence between his dwelling and the store building or division line, except a wire and some flowers growing between them. When his wife died in the winter of 1908, the flowers died soon afterwards, as he testified, for want of her care, and there is not now anything indicating a separation of the storehouse from the dwelling. Since the death of his wife, one of his sons, Joseph Edward O'Brien, and his wife, have made their home with him, and he has been, and is now, still following his trade as a tailor, whenever he can get work and the infirmities of his years do not prevent. The evidence is undisputed that the bankrupt owns no other real estate, or home, and that the value of this lot does not exceed $2,300, with all the improvements thereon; at the time of its designation as a homestead by his occupancy thereof in 1898, it did not exceed in value $1,000. It may be material to state that the only source of income

the bankrupt possesses is from his trade and the rental of the drug store, the amount of which appears in the testimony to have been $20 per month. The other store was unoccupied and closed up at the time of the filing of the petition herein, where he testified he had some implements of his trade stored."

A perusal of the evidence reveals that the referee is substantially correct in his summarization of the facts. But I do not consider that the facts as summarized by the referee warrant or give support to his order setting apart this entire property to the bankrupt as exempt. From the time the bankrupt moved his residence to the rear of the lot and constructed the brick storehouse in 1908 down to the time of bankruptcy, the storeroom on the corner of Washington and Thomas avenues was rented for profit to different druggists and is now rented and used as a drug store. The bankrupt has never been interested in the drug business conducted in the corner storeroom. In my opinion this part of the building has never been impressed with the homestead character since its erection.

Upon completion of the building the bankrupt occupied and used the other storeroom as a grocery store for a short time and then failed in business. He also used a small section in the rear of the storeroom for a time in carrying on a sort of tailoring and cleaning establishment, but abandoned that use. Thereafter he rented this storeroom to various persons for the conduct of a grocery business. There is not in the record or in the findings of the referee anything indicating that this abandonment of use by the bankrupt was of a temporary nature. On the contrary, it is clearly shown to have been a permanent abandonment. In my opinion this part of the brick building lost its character of homestead prior to the institution of the voluntary proceeding in bankruptcy. The age, infirmities, and necessities of the bankrupt may not be considered in determining the question whether this store building should be set aside to him as exempt. The Supreme Court of Texas, speaking through Associate Justice Stayton, says:

"To preserve the place of business, which is separate and distinct from the home, as a part of the homestead, two things must concur: (1) The head of a family must have a calling or business to which the property is adapted and reasonably necessary. (2) Such property must be used as a place to exercise the calling or business of the head of the family." Shryock & Rowland v. Latimer, 57 Tex. 674.

These two things do not concur in the present case. See, also, Hargadene v. Whitfield, 71 Tex. 482, 9 S. W. 475; Pfeiffer v. McNatt, 74 Tex. 640, 12 S. W. 821. It is also well established by the courts of Texas that the owner of a parcel or lot of land in a town or city occupied by him as the homestead of his family may abandon a part thereof by devoting it to a purpose inconsistent with its use as a part of a homestead. Langston v. Maxey, 74 Tex. 155, 12 S. W. 27; Wynne v. Hudson, 66 Tex. 1, 17 S. W. 110; O'Brien v. Woeltz, 94 Tex. 149, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829; Carothers v. Lange (Tex. Civ. App.) 55 S. W. 580.

A proper order will be entered setting aside the action of the referee in so far as he sets aside as exempt the brick building.