### CARSTENS et al. v. LANDRUM et ux.
### (No. 2128.)

Court of Civil Appeals of Texas. El Paso.
March 22, 1928.

Rehearing Denied April 19, 1928.

**1. Homestead ⬅181(3)—Evidence held to support findings that grantors had not abandoned homestead, nor acquired new one, when trust deed was executed.**

In suit to foreclose deed of trust, evidence *held* to support jury's findings that tract covered by deed had not been permanently abandoned as homestead by grantors, and that they had not acquired new homestead, when deed was executed.

**2. Homestead ⬅161—Home will not be considered abandoned before acquisition of new one, except on very convincing evidence of abandonment with intent not to return.**

An old home will not be considered abandoned before acquisition of a new one, except on evidence of very convincing character showing abandonment with intention not to return.

**3. Witnesses ⬅159(14)—Defendant's testimony, some time before exclusion of his testimony, as to whether he knew decedent, that he could not read or write, held admissible (Rev. St. 1925, art. 3716).**

In suit to foreclose trust deed of land claimed as homestead, defendant's testimony, some time before exclusion of his testimony as to whether he knew decedent, that he could not read or write, *held* not violative of Rev. St. 1925, art. 3716.

**4. Appeal and error ⬅230—Refusal to instruct jury not to consider certain testimony presents no error, in absence of timely objection to its admission (Rev. St. 1925, art. 3716).**

Refusal to instruct jury not to consider defendant's testimony, some time before exclusion of his testimony as to whether he knew decedent, under Rev. St. 1925, art. 3716, that he could not read or write, presents no error, in absence of timely objection to its introduction.

**5. Appeal and error ⬅218(2)—Objection to special issues cannot be first presented in appellate court (Rev. St. 1925, art. 2185).**

Objections, not made in court below, to submission of special issues, cannot be presented in Court of Civil Appeals for the first time, under Rev. St. 1925, art. 2185.

**6. Homestead ⬅122—Lender could not rely nor predicate estoppel on declarations in trust deed as to abandonment of homestead openly, visibly, and apparently occupied by husband and small child, while wife and older children lived elsewhere.**

Lender, attempting to secure lien on land, openly, visibly, and apparently used or occupied by husband with one small child, while wife and older children lived elsewhere, but not on land which lender claimed was acquired as new homestead, could not rely nor predicate estoppel on declaration in deed of trust as to their abandonment of homestead and acquisition of such new homestead.

Appeal from District Court, Bexar County; S. G. Taylor, Judge.

Action by Charles G. Carstens, on whose death George A. Carstens and others, independent executors of decedent's estate, were substituted as plaintiffs, against J. M. Landrum and wife. From a judgment for defendants in part, plaintiffs appeal. Affirmed.

S. Engelking, of San Antonio, for appellants.

Dwyer & Russell, of San Antonio, for appellees.

HIGGINS, J. This suit was brought by Charles G. Carstens against J. M. Landrum and wife, upon note executed by the defendants in favor of the plaintiff for $2,000, dated April 12, 1918, and to foreclose a deed of trust of the same date securing the note executed by defendants to W. A. Wurzbach, trustee, upon 200 acres of land in Atascosa county.

Carstens died, and the suit was prosecuted to judgment by the independent executors of his estate.

The deed of trust contains the following:

"And parties of the first part hereby declare that the property hereinbefore mentioned and conveyed to said trustee forms no part of any property by them owned, used, or claimed as exempted from forced sale under the laws of the state of Texas, and disclaim and renounce all and every claim thereto under any such law or laws, and hereby designate the following described property, to wit: [Here follows description of three lots referred to in the record as the Corpus Christi road property] situated about three and one-half miles from the city of San Antonio, Bexar county, Tex., and being the same property conveyed to J. M. Landrum by deed from Walter L. Neal, dated April 12, 1918.

"And parties of first part hereby declare that they actually now reside upon the above-described property, and that they have abandoned the 200 acres hereinbefore described as a homestead, having leased the same out, and never intend to again use the same as their homestead, and that said above-described property, that is, said lots Nos. 1, 2, and 3, is now

actually used, occupied, and intended to be used in the future as and for their homestead, as their homestead, and as constituting all the property owned, used or claimed by them as exempt under said laws."

The defendants pleaded that the 200 acres was their homestead, and prayed cancellation of the deed of trust.

The plaintiffs pleaded estoppel to assert the homestead claim because of the written declaration in the deed of trust and oral declarations of defendants to Chas. G. Carstens respecting their homestead being upon the Corpus Christi road property and their abandonment of the Atascosa county land as such.

Upon special issues the jury found:

(1) At the time of the execution of the deed of trust the 200-acre tract was the homestead of J. M. Landrum and family.

(2) At the time of the execution of the deed of trust a portion of the 200-acre tract was being actually used or actually occupied by J. M. Landrum or by J. M. Landrum and his minor son, with the intention and purpose on the part of J. M. Landrum that said 200-acre tract was the homestead of himself and family.

(2½) Such use or such occupancy was open, visible, and apparent.

(3) The 200 acres had not been permanently abandoned by Landrum and wife as the home of themselves and family previous to the execution of the deed of trust.

(4) At the time of the execution of the deed of trust, the property on the Corpus Christi road was not the homestead of Landrum and wife.

(4½) The family of J. M. Landrum was not living in the house on the Corpus Christi road at the time the deed of trust was executed.

(5) Landrum and wife, before the execution of the deed of trust, and as an inducement to procure the $2,000 loan, did not represent and state as a fact to W. A. Wurzbach in substance and effect that they then lived on the Corpus Christi road and had abandoned the 200 acres in Atascosa county as their homestead.

(6) Wurzbach did not believe and rely upon such statement, if any.

"Question No. 7: If said statement had not been made (that is, if the same was made), would Charles G. Carstens or said Wurzbach have refused to make said loan?" Answer: "No."

(8) Wurzbach was not acting as the agent of Chas. G. Carstens.

"Question No. 9: If, in answer to question No. 8, you have found said Wurzbach was acting as the agent of Chas. G. Carstens, then was said agent acting within the scope of his authority with reference to the matters inquired about in questions Nos. 5, 6, and 7?" Answer: "No."

5 S.W.(2d)—14

Upon the findings made, judgment was rendered in favor of the plaintiff for the amount due upon the note against J. M. Landrum. The deed of trust was declared to be void and canceled, and the 200 acres of land released from the lien sought to be fixed thereon by the same.

From this judgment the executors of the decedent appeal.

[1] It is first assigned as error that the finding upon the issue of abandonment as a homestead of the 200-acre tract in Atascosa county, and the finding upon the issue of the acquisition of a new homestead upon the Corpus Christi road property at the time of the execution of the deed of trust, is against the preponderance of the evidence to that degree which shows manifest injustice has been done, for which reason a new trial should have been granted by the court below.

J. M. Landrum testified: He acquired the land in controversy in 1906. In the fall of 1917 his wife came to San Antonio to school their children. That he continued to live on the farm with his four year old boy, and cultivated part of it. That another son cultivated a portion of it, and he had leased 100 acres of the same to one Charlie Hurley. From the time he purchased said property and made it his homestead he continued to live there until 1922, when he came to San Antonio to live, and that he leased his home to his son and to other persons. That in April, 1918, he was living on the farm, and his wife was living on Pardee street in San Antonio, and he continued living on the farm in 1918, 1919, 1920, 1921, and 1922: The purpose of his wife in coming to San Antonio was to educate her children and obtain positions for some of them who were large enough to work. At the time the note and deed of trust were executed, his wife was living in San Antonio on Pardee street, and he was living on his homestead in Atascosa county.

He further testified his wife came to San Antonio in 1917, and that she first rented a house on Roosevelt avenue, and from time to time he visited her, but that he continued to remain and cultivate the property under controversy until 1921. In November, 1917, his wife moved from Roosevelt avenue to a house she rented on Pardee street, and where she continued to reside until some time in May, 1918, and that he had made no representations to Mr. Feldman, the agent who negotiated the loan, that he had abandoned his homestead.

Wright Landrum testified he was the son of defendants, 34 years of age, and at that time was living on his father's farm of 200 acres, where he had lived all of his life. That after his mother and some of the children came to San Antonio, his father remained on the farm, and was there using and cultivating it during the years 1917 to 1921, inclusive. His mother came to San Antonio in 1917 to

send the smallest children to school, and he still rented from his father, but that, from the time his mother moved to San Antonio in 1917 until 1922, his father, with one of his little boys, continued to live on the farm, and cultivate the same during all of the said period of time.

Mrs. Landrum testified: She and her husband had owned the 200 acres of land since 1906, and still owned it, and that she lived on it from the time it was purchased until she came to town in 1917, stayed a year, went back to the farm in 1919, and remained there until she returned to San Antonio in the fall of 1922. That she first moved to San Antonio in September, 1917, to send the children to school and to be with the girls who were working, three of the girls working and three going to school, and that her oldest son and little boy were on the farm in Atascosa county with their father. That she moved to 5004 Corpus Christi road some time in May, 1918, when she removed from Pardee street, and that, when she moved from Pardee street to the property on Corpus Christi road, she did not send the children to school until the following session, for the reason that at the time she moved school was almost out. That Mr. Neal and Mr. Feldman were arranging for the loan, and that she was then living on Pardee street. That, when she left the farm and came to San Antonio, it was her intention to send three of the children to school and the three older girls to work and help her out, and her husband stayed on the farm with their little boy, and that it was her intention to return to the farm some time, and that that was her home. That she moved to the Corpus Christi road property in May, but they did not receive a deed to it until July 16, 1918.

The witness denied that she was living on the Corpus Christi road at the time of the execution of the note and deed of trust, or that Mr. Feldman brought Mr. Carstens out to her house on that road and she went down to the farm with him.

There is testimony by a number of other witnesses that Mrs. Landrum was living on Pardee street in San Antonio in May, 1918.

F. M. Hurley testified: That in 1917 J. M. Landrum was living on his (the said J. M. Landrum's) place, near Poteet. Landrum bought groceries from him and supplies for the farm, and did his trading at the store. That he was living on the farm in 1918, and that he continued to live on the farm and to trade with him until he left the store in 1922.

W. Hurley testified to the same effect as F. M. Hurley.

[2] The quoted testimony abundantly supports the findings attacked. Especially is this true upon the issue of abandonment of the home in Atascosa county in view of the testimony that the deed to the Corpus Christi road property was not delivered to the Landrums until July, 1918, and at the time the deed of trust was executed none of the Landrums were living at such property. The rule is that an old home will not be considered abandoned before the acquisition of a new one, except upon evidence of very convincing character showing abandonment with intention not to return. See Ritz v. Bank (Tex. Civ. App.) 234 S. W. 425, and cases there cited.

[3, 4] Without objection, J. M. Landrum testified he could not read or write. Some time later he was asked if he knew the deceased, Landrum. Upon objection, this was excluded under article 3716 (Rev. St. 1925), whereupon appellant's counsel requested the court to instruct the jury to disregard his testimony that he could not read or write. In the first place, this testimony was not violative of article 3716. Furthermore, if it was, timely objection should have been made to its introduction. The refusal to instruct the jury not to consider the testimony of Landrum that he could not read or write thus presents no error. Mitchell v. Deane (Tex. Civ. App.) 294 S. W. 347, and cases cited.

[5] The objection urged under the fifth assignment to issues 2 and 2½ was not made in the court below, and cannot be here presented for the first time. Article 2185, R. S. Furthermore, we do not regard the questions subject to the objection here urged.

[6] The two remaining propositions relate to the issue of estoppel. Appellants do not question the rule that an estoppel cannot arise in favor of a lender who has attempted to secure a lien on a homestead in the actual use and possession of the family, based upon declarations of the husband and wife, written or oral, that such property is not their homestead. Reinstein v. Daniels, 75 Tex. 640, 13 S. W. 21; Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 12; Mortgage Company v. Norton, 71 Tex. 683, 10 S. W. 301; Pellat v. Decker, 72 Tex. 578, 10 S. W. 696; Sheckels v. Lewis, 33 Tex. Civ. App. 8, 75 S. W. 836.

As we understand appellants' position, they claim this rule has no application, where, as here, only the husband with one small child remains in possession and use of the property; the wife and six older daughters being away, living at another place.

In our opinion, findings 2 to 4½ make applicable the doctrine announced in the cited cases, and precluded the lender from relying upon the declaration made in the deed of trust. The husband was the head of the family. He was in actual use or occupancy of the land in Atascosa county. His little son was there with him. His use or occupancy was open, visible, and apparent, and at the time his family was not living on the Corpus Christi road as the deed of trust stated. Under these circumstances, the lender had no

right to rely upon the declaration contained in the deed of trust, and cannot predicate an estoppel thereon.

Affirmed.