### FIRST STATE BANK OF MEMPHIS v. SEAGO.

#### No. 4935.

Court of Civil Appeals of Texas. Amarillo.

Oct. 10, 1938.

Rehearing Denied Nov. 7, 1938.

Sam J. Hamilton and John Deaver, both of Memphis, for appellant.

Marshall & Perkins and Charles C. McDugald, all of Quanah, and J. O. Fitzjarrald, of Memphis, for appellee.

STOKES, Justice.

This suit was filed April 4, 1936, by the appellant Bank against appellee, S. L. Seago, upon two promissory notes in the respective sums of $2429 and $2703. Appellant also sought foreclosure of a deed of trust lien, given by appellee to secure the payment of the notes, upon an undivided one-fourth interest in lots Nos. 1 to 15 inclusive, in block No. 32, of the original town of Memphis.

Appellee answered by pleading the general issue and by special answer to the effect that the deed of trust was void because the property covered by it constituted his business homestead, it being, at the time the deed of trust was executed, and for many years prior thereto and at all times since its execution, the place where he, as the head of a family, exercised his calling or business as a cotton ginner and service station operator.

There was no contention that the notes were given for improvements on the property nor for part of the purchase price nor for taxes due thereon or assessed against the same.

A jury was empaneled to try the case, but at the conclusion of the testimony the parties agreed that the jury may be discharged and all issues of law and fact submitted to and determined by the court. Judgment was rendered in favor of appellant against appellee upon the notes but, finding the property to constitute the homestead of appellee, foreclosure of the deed of trust lien was denied.

Appellant duly excepted to the judgment, gave notice of appeal, and presents the case in this court upon the general contention that lots Nos. 13, 14 and 15 had been abandoned by appellee as a business

homestead and the court erred, therefore, in denying foreclosure of its deed of trust lien as to that portion of the property.

The facts show that the fifteen lots constituted the entire block No. 32 and that, although on the plat of the city of Memphis, it was subdivided into fifteen lots, yet the entire block had always been used as a unit and appropriated in its entirety, especially since 1916 when appellee and his partners erected a cotton gin about the center of same. Appellee operated the gin continuously from 1916 to the date of the trial. He was a married man and owned other lots and property in the city of Memphis which constituted the residence homestead of himself and family. In July, 1929, he erected a brick structure on the southeast corner of the block, consisting of drive-in shed and a room adjoining, which was suitable for, and has thereafter been used as a gasoline filling station. This structure was located on the south 24 feet of lot No. 15 and the southeast portion of lot No. 14. The undisputed evidence shows that the cotton season covered only about half of each year and that during the other half, prior to the erection of the filling station, appellee was without employment. He testified that he erected the filling station in order that he might operate it and thereby be employed or engaged during the time each year the cotton gin was not in operation. He testified that he, personally, operated the filling station for about eighteen months after it was built and then leased it to other parties for one year, with the understanding and agreement that he would be given employment at the filling station during the time he was not engaged in operating the cotton gin. At the end of the year, the lease was renewed and the filling station has been leased each year since, always with the understanding that appellee would be given employment in the filling station during the time when he was not engaged in operating the cotton gin. The deed of trust was executed March 26, 1935, and at that time the filling station was under lease for a year, appellee being then employed by the lessee to assist him in connection with its operation.

The case presents two phases of the question of whether or not the filling station and the plot of ground upon which it was located were abandoned as the business homestead of appellee. First, whether or not the erection of the filling station and its operation by appellee, in person, constituted an abandonment of that portion of the property and, secondly, whether or not the leasing of it, under the circumstances, constituted such abandonment and, in either case, deprived it of the exemption granted by Art. 16, Sec. 51, of the Constitution, Vernon's Ann.Civ.St.Const. Art. 16, § 51, as the homestead of appellee by virtue of its being a place to exercise the calling or business of appellee as the head of a family.

As to the first phase of the question, appellant asserts that appellee having contended and shown that his occupation, calling or business was that of cotton ginner and that the building constituting the filling station, including the ground upon which it was located, having been dedicated to a use foreign to that of a cotton ginner, which was his chief occupation, it necessarily would follow that same was abandoned as a place to exercise his calling or business as a cotton ginner and, this having taken place prior to the execution of the deed of trust, the court erred in denying appellant a foreclosure of its deed of trust upon that portion of the property.

■ It has many times been held by the courts of this state that a homestead, whether it be the lot or lots upon which the family resides or a place to exercise the calling or business of the head of the family, will not be considered abandoned before the acquisition of a new one, except upon evidence of very convincing character showing abandonment. Carstens et al. v. Landrum, Tex.Civ.App., 5 S.W.2d 208; Bogart v. Cowboy State Bank & Trust Co., Tex.Civ.App., 182 S.W. 678; Sykes v. Speer et al., Tex.Civ.App., 112 S.W. 422.

In delivering the opinion of the court in the Sykes Case, supra, Justice Hodges, said [page 426]: "When no other homestead has been acquired 'it must be undeniably clear and beyond, almost the shadow, at least of reasonable grounds of dispute, that there has been a total abandonment with an intention not to return and claim the exemption,' before an abandonment will be found. Gouhenant v. Cockrell, 20 Tex. [96], 97; Cantine v. Dennis (Tex.Civ.App.) 37 S.W. [184] 186."

In the Carstens Case, supra, it is said [page 210]: "The rule is that an old home will not be considered abandoned before the acquisition of a new one, except upon

evidence of very convincing character showing abandonment with intention not to return."

While these cases refer to the homestead in its entirety, the same rule unquestionably applies when it is contended that a portion only of the old home has been abandoned.

■ The Constitution, Art. 16, Sec. 51, Vernon's Ann.Civ.St. Art. 16, § 51, among other things, provides that the homestead of the family shall consist of * * * "a place to exercise the calling or business of the head of a family." It has been said that the words "calling" and "business", taken together, embrace every legitimate avocation in life by which an honest support of a family may be obtained. In the case of Shryock et al. v. Latimer, 57 Tex. 674, Justice Stayton, speaking for the Supreme Court, said that:

The former word (calling) "* * * was probably used in the sense of 'profession' or 'trade,' which would embrace all such employments as by course of study or apprenticeship in any of the learned professions, liberal arts, or mechanical occupations, a person has acquired skill or ability to follow, and which has become practically a matter of personal skill, in its nature not temporary in existence.

"The latter word [business] was probably used in contradistinction to the other, to denote that which Mr. Webster defines to be the general meaning of the word, 'that which occupies the time, attention and labor of men for the purpose of profit or improvement,' and this may be temporary. * * * The 'calling' may exist as a fact, whether it be practiced or not; with the other, [business], the actual employment in the given occupation furnishes the only means to determine whether the 'business' exists or not."

In either case the exemption applies. The Constitution does not restrict the exemption to any single line of business but is sufficiently comprehensive to cover the operations in which the head of the family engages for the purpose of some legitimate avocation or activity by which to provide a means of support for himself and his family.

Appellant cites us to the case of Pfeiffer et al. v. McNatt et al., 74 Tex. 640, 12 S.W. 821, and contends that under the doctrine announced by the Supreme Court in that case it was the duty of the court to foreclose its deed of trust on the filling station property as contended for by it in this case. We do not think the holding in that case supports the contention. In that case McNatt was mayor of the town and was also a notary public and conveyancer. In addition, he sometimes acted as deputy postmaster—the postoffice being located in his building where he had his office. He owned two buildings connected by two archways. He kept the equipment necessary to discharge his duties as mayor in the rear of one of the buildings and a desk, spool case and other equipment which he used as notary public and conveyancer, in the other. The court held he could not hold both buildings as exempt but stated very clearly that while he had "* * * several callings, and follows all of them for a living,—mayor, notary public, conveyancer, and sometimes deputy postmaster; but we cannot see that this fact should militate against his right to have some place protected by law from forced sale, where he can do business and support his family." [Page 822.] The holding was to the effect that, while he had the right to follow several different callings or kinds of business and the right to maintain as exempt one place in which to exercise all of them together, he did not have the right, under the law, to hold two places to exercise such callings and decreed that one of them was not exempt.

■ Applying to the case before us the doctrine announced by the Supreme Court in the McNatt Case, we have the appellee engaged in two kinds of business, that of cotton ginner through the cotton season which occupied about half of the year, and that of filling station operator during the balance of the year; and, although these were two separate and distinct kinds of business, yet he engaged in both of them as the head of a family for the purpose of carrying on the business activities in which he engaged for the entire year at the same place and upon the same plot of ground which he had used for many years as what the courts frequently denominate a "business homestead." It is our opinion that, since the filling station was located upon a portion of the premises which appellee was using and occupying as a place to exercise his calling or business, in the absence of clear and convincing proof that, when he erected and operated the filling station, he intended to abandon that portion of it as a business homestead, the trial court was not warranted in holding that he did so,

and we do not find in the record any such proof. The burden rested upon appellant to establish by a preponderance of the evidence its contention that, when appellee erected the filling station and proceeded with its operation, he intended to, and as a matter of fact did, abandon that portion of the property as his homestead. We are not in accord with its contention that it discharged the burden merely by showing the erection of the filling station and its subsequent operation by appellee. Under the circumstances, we perceive no such inconsistency in the two kinds of business in which appellee engaged by the operation of both the cotton gin and the filling station upon the same premises as, of itself, necessarily to work an abandonment of either as his business homestead. We, therefore, overrule appellant's first contention.

 As to the other phase of the question, viz., the contention that appellee abandoned the property by renting or leasing the same to other parties, the Constitution provides that a temporary leasing or renting shall not change the character of the homestead property when no other homestead has been acquired. It unquestionably is true that an abandonment of homestead property can be established by showing that its owner has leased or rented it to other parties, but such leasing or renting is not, of itself, proof of such abandonment. The renting or leasing may be done under circumstances which would establish the intention of the homestead owner to abandon it, but unless it does so or the intention to abandon the property is established by some other means or proof, the courts will construe the renting or leasing as being temporary only, because of the expressed provision of the Constitution in that respect. As we have stated, the burden of proving both the act and the intention of the homestead owner to abandon the property as a homestead rests squarely upon the party seeking to subject it to forced sale. It is always a question of fact and must be established by a preponderance of the evidence. In this case appellant established the fact that appellee had leased or rented the premises. Further than the mere act of leasing or renting it, the testimony is silent, either in fact or circumstance, as to any intention on his part. Appellee testified that his purpose in building the filling station was to furnish a means whereby he would be engaged during that portion of the year when his gin was not in operation. He further testified that he, personally, operated the station for about a year and a half and then leased it to other parties for a year. Two such leases had been made when the deed of trust was executed and each rental contract was made upon condition that he be given employment in the filling station during that period of the year when he was not engaged at the gin. In our opinion, these facts, of themselves, did not establish abandonment as a matter of law. The trial court having found against appellant upon these contentions and there being in the record ample warrant for his action in that regard, we would not be justified in holding that his action in so doing was error. Graves v. Campbell, 74 Tex. 576, 12 S.W. 238; Ritz v. First Nat'l Bank, Tex.Civ. App., 234 S.W. 425; Carstens v. Landrum, Tex.Civ.App., 5 S.W.2d 208; City Nat'l Bank v. Walker, Tex.Civ.App., 111 S.W.2d 350.

We have considered all of the assignments of error and propositions of law presented by appellant and, being of the opinion that none of them presents reversible error, the judgment of the trial court will be affirmed.